Ruohs v. Insurance Co.

JOSEPH RUOHS *et al. v.* TRADERS FIRE INSURANCE CO. *et al.*

(*Knoxville.*   September Term, 1903.)

1. **INSURANCE.** Reinsurance defined.

Reinsurance is an insurance by the first insurer of the whole or some part of his interest in the risk created by his contract of insurance; or it is a contract that one insurer makes with another to protect the first from a risk he has already assumed. (*Post, p.* 419.)

Case cited and approved: Insurance Co. v. Insurance Co., 64 N. J. Law, 343.

2. **SAME.** Reinsurer is not liable to original insured, as a general rule.

A contract of reinsurance is peculiar in its character, and differs from the ordinary policy of insurance; and as a general rule, it creates no privity between the reinsurer and the party originally insured, but it is simply an agreement to indemnify the insurer, partially or altogether against a risk assumed by the latter in a policy issued to a third party. (Post, pp. ——.)

Case cited and approved: Insurance Co. v. Insurance Co., 102 Tenn., 267.

3. **SAME.** But reinsurer is liable to original insured, if that intention appears.

But it is well established, as an exception to this general rule, that a direct liability may be incurred by the reinsurer to the original insured, if the intention to create it sufficiently appears from the contract of reinsurance.

4. **SAME.** Same. Reinsurer assuming original policies becomes liable to holders thereof, when.

Ruohs v. Insurance Co.

Where the reinsurer contracts with the insured to assume the policies and to pay the holders thereof all such sums as the reinsured may become liable to pay, the original policy holders suffering losses may sue the reinsurer, and recover from him such losses.

Cases cited and approved: Johannes v. Insurance Co., 66 Wis., 50; Barnes v. Insurance Co., 56 Minn., 38; Whitney v. Insurance Co., 127 Cal., 464.

5. SAME. Same. Same. Reinsurer contracting to pay losses for original insurer's property and business is liable to original policy holders.

A reinsurer contracting with the original insurer, in consideration of the entire business, property, assets, and good will of the original insurer, to pay the losses under the outstanding policies, becomes liable to the original insured policy holders. (Post, pp. —.)

Cases cited and approved: Whitney v. Insurance Co., 127 Cal., 464; Insurance Co. v. Welch, 26 Kan., 641; Barnes v. Insurance Co., 56 Minn., 38; Glen v. Insurance Co., 56 N. Y. 379; Fisher v. Insurance Co., 69 N. Y., 161; Shoaf v. Insurance Co., 127 N. C., 308; Insurance Co. v. Insurance Co., 1 N. D., 151; Johannes v. Insurance Co., 66 Wis., 50; Hunt v. Insurance Co. (N. H.), 38 Atl., 145; 38 L. R. A., 514; 73 Am. St. Rep., 602; Chalaron v. Insurance Co. (La.), 21 South., 267, 36 L. R. A., 742; Gifford v. Corrigan, 117 N. Y., 257.

6. CONTRACTS. Beneficiary may sue on promise of third person assuming the obligor's obligation.

The doctrine is firmly established in this State that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party. (Post, pp. —.)

Ruohs v. Insurance Co.

Cases cited and approved:  McCarty v. Blevins, 5 Yer., 196; Mills
    v. Mills, 3 Head, 711; Moore v. Stovall, 2 Lea, 543; Thompson
    v. Thompson, 3 Lea, 126; Bedford Co. v. Railroad, 14 Lea, 525;
    Railroad v. Houston, 85 Tenn., 224; O'Conner v. O'Conner, 88
    Tenn., 76.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.
—T. M. McCONNELL, Chancellor.

COOK, SWANEY & COOK, for complainants.

CHAMBLISS & CHAMBLISS and JOHN T. LEYETT, for
defendants.

MR. JUSTICE McALISTER delivered the opinion of the
Court.

Complainants, who are original policy-holders in the
Traders Fire Insurance Company, preferred this bill
against the North British & Mercantile Insurance Com-
pany to recover indemnity, first, for fire losses claimed to
have been sustained; second, for returned premiums on
account of canceled policies; and, third, claims of W. J.
Colburn & Co. for returned premiums paid to policy-

holders of the Traders Company under written instructions of the North British Company. The theory of the bill is that complainants are the beneficiaries of a contract entered into between the Traders and the North British Companies, by which the latter assumed the payment of the liabilities of the former company. The contract, which is made the basis of the present suit, is in the words and figures following, to-wit:

"In consideration of one dollar, the receipt of which is hereby acknowledged, and a further payment of ten thousand dollars before twelve o'clock noon, on Saturday, April 28, the North British & Mercantile Insurance Company of Edinburgh and London, hereby agrees through its United States manager, to assume the fire risks of the Traders Fire Insurance Company, of New York, from six o'clock p. m., April 27, 1900, not otherwise reinsured.

"A further payment on account, of twenty-five thousand dollars, to be paid on or before May 1, and the balance due, namely, the net, unearned premiums on outstanding policies, less fifteen per cent. commissions thereon, to be paid upon completion of schedules, and at least, within thirty days from date hereof.

"This contract to be null and void unless payments as above stated are duly made.

"This temporary agreement to be replaced by a final contract of like terms and conditions when the total amount due hereunder is determined as per schedule. Schedules to be completed as soon as practicable.

"NORTH BRITISH & MERCANTILE INSURANCE CO. OF EDIN-
   BURGH & LONDON,
              "By E. G. RICHARDS, United States Manager.
"THE TRADERS FIRE INSURANCE COMPANY OF NEW YORK,
                   "By W. A. HALSEY, President.
   "April 27, 1900."

It is insisted on behalf of the North British Company
that no liability attaches to it on account of said con-
tract, for the reason, as disclosed on its face, it was only
a provisional and temporary agreement, dependent for
its consummation upon the payment of the consideration
therein expressed, and that the Traders Company, hav-
ing defaulted in the payment of $70,000 due thereunder,
the North British Company was constrained on August
3, 1900, to declare said contract forfeited.  The insist-
ence made on behalf of the North British Company is
that the policy holders of the Traders Fire Insurance
Company can have no higher rights than that company,
for the reason they claim under the contract which the
Traders forfeited.   It is said that this contract was
clearly a contract of reinsurance, as is disclosed by the
language used, "not otherwise reinsured." Joyce on In-
surance, section 117, is then cited for the proposition,
viz.: "A reinsurance contract is a contract of indemnity
to the company reinsured only.   The reinsured sustains
as to the reinsurer the same relation which the original
insured bears to the reinsured.   The contract of rein-
surance does not inure to the benefit of the insured.   He
has no claim, legal or equitable, against the reinsurer."

*Royal Insurance Company* v. *Vanderbilt Insurance Company*, 102 Tenn., 267, 52 S. W., 168, is also cited, in which it was said as follows:

"A contract of reinsurance is peculiar in its character, and differs from the ordinary policy of insurance. It claims no privity between the reinsurer and the party originally insured. It is simply an agreement to indemnify the insurer, partially or altogether, against a risk assumed by the latter in a policy issued to a third party."

The general rule is conceded that a third party may sue directly in his own name on a contract made for his benefit, but it is insisted that the exception is well established that such third party cannot maintain an action to enforce the promise, where the promise is void as between the promisor and the promisee. In support of this position counsel for the North British Company cite *Dunning* v. *Leavitt*, 85 N. Y., 30, 39 Am. Rep., 617, where it appeared that a grantee, holding under a warranty deed which contained a covenant that the grantee assumed and agreed to pay a mortgage on the premises, had been evicted by a paramount title. It was held that the holder of the mortgage could not enforce the covenant for the reason that the consideration therefor had wholly failed. Andrews, J., delivering the opinion of the court, wrote:

"It is said that the action can be maintained upon the doctrine of *Lawrence* v. *Fox*, 20 N. Y., 268, and kindred cases, but I know of no authority to support the proposition that a person not a party to the promise, but for

whose benefit the promise is made, can maintain an action to enforce the promise where the promise is void as between the promisor and the promisee for fraud, want of consideration, or failure of consideration. It would be strange, I think, if such an adjudication should be found."

The position assumed by counsel for the North British Company may be best stated in his own language, to wit:

"First. That the preliminary contract was not a contract of assumption, but was a contract of reinsurance. Second. That, if construed to be a contract of assumption, the Traders Fire Insurance Company could not recover from the North British & Mercantile Company, by reason of its own breach, and that these claimants could not be in any better attitude than the Traders Company. Third. That, as shown on this record, the North British & Mercantile Insurance Company acted as agent during the existence of the preliminary contract, and has done no act or thing which would mislead these claimants. Fourth. That the North British & Mercantile Insurance Company made the preliminary contract in good faith with the Traders Fire Insurance Company, and used every effort to effectuate and consummate the same, and to induce the Traders Fire Insurance Company to pay the consideration agreed. And that because of such default on the part of the Traders Fire Insurance Company the North British & Mercantile Insurance Company should not be made to suffer."

This brief outline comprises a general statement of the principal defenses relied on by the North British Company. We will now proceed to state the case made on behalf of the complainant policy holders, and cannot do better in presenting their contention than to state the proposition formulated by their counsel, as follows:

First. This is not an ordinary case of technical insurance between two insurance companies. The facts found by the court of chancery appeals make it a contract for the use and benefit of complainants and other policy holders of the Traders for a valuable consideration under circumstances entitling them to maintain this suit. The court of chancery appeals finds that the agreement and understanding was that the North British should "assume" all outstanding risks of the Traders, and place itself in the same position towards said policy holders as if said policies had been its own; that the Traders went out of business, and all of its assets, amounting to about $85,000, went into the hands of the North British Company, and the latter assumed all the fire risks of the former, and the North British dealt with the Traders policies the same as its own, canceling some, paying returned premiums, granting permits, adjusting and paying losses, and gave out statements by letters and agents that it had assumed all of said policies, and that nothing was necessary to be done by the policy holders to make said contract binding on the North British Company.

In order to show the full scope of the present suit, it

should have been stated that the bill was filed in the nature of a general creditors' bill on behalf of complainants and all other policy holders and creditors.

The chancellor was of opinion that the North British Company was liable to complainants for the payment of their claims.  He was also of opinion that the contract in question operated to transfer to the North British Company practically all of the assets of the Traders Company, and that the latter company, having at once ceased to do business, all of its property became a trust fund for its creditors. · He was further of opinion that the $85,000 was wrongfully paid by the Traders Company and received by the North British Company; that it is a debt due the Traders Company, which its creditors are entitled to collect and appropriate to the payment of their debts pro rata.

The bill was therefore sustained as a general creditors' bill, and publication was ordered, together with a reference for an account. · On appeal, the court of chancery appeals affirmed the decree of the chancellor.  Defendant insurance companies again appealed, and have assigned errors.

Our first inquiry is to ascertain the facts of the case as found and established by the court of chancery appeals.   That court finds that in the years 1899 and 1900 the Traders and the North British Companies were both carrying on an insurance business in Tennessee.  W. J. Colburn & Co. were the general agents of the Traders Insurance Company for the State of Tennessee, with an

office at Chattanooga. In March, 1900, the insurance commissioner of Tennessee, for reasons satisfactory to himself, refused to renew the license of the Traders Company to do business in Tennessee. In 1900, Everett U. Crosby, the general agent of the North British Company, advised W. J. Colburn & Co. by letter that the outstanding business of the Traders Company had been reinsured by the North British & Mercantile Insurance Company. It appears that this letter was inclosed by Colburn & Co. to Insurance Commissioner Craig, who replied that this reinsurance in the North British Company would be entirely satisfactory to his department. The North British Company on April 27, 1900, took charge of the business of the Traders Company, and from that date to August 2, 1900, received in installments the sum of $85,000 from the latter company.

The court of chancery appeals, through Judge Taylor, further finds that: "Notice of this reinsurance was published in the papers throughout the country, and it was given out by the North British Company generally to all the former agents and policy holders of the Traders. The North British Company dealt with the Traders policies as if they were its own, canceling some, paying returned premiums, granting permits, and paying losses, and giving out statements by letters and through its agents that it had assumed all of said policies, and that nothing was necessary to be done by the policyholders to make said policies binding." That court finds:

Ruohs v. Insurance Co.

"There can be no question as to the undertaking of the North British Company to reinsure policy holders in the Traders Company, and to assume all liabilities and risks that had been incurred by the latter."

The court of chancery appeals further finds:

"On the third of August, 1900, the North British Company attempted to cancel its contract with the Traders by letter as follows:

" 'Traders Fire Insurance Co. of New York, 33 Liberty Street, New York—Dear Sir: You will please take note that you have made default in the contract entered into between you and the North British & Mercantile Insurance Company of London and Edinburgh, bearing date twenty-seventh day of April, 1900. We do hereby declare said contract to be null and void.

"Very respectfully,
" 'NORTH BRITISH & MER. INS. CO. of London & Edinburgh,
"'By E. C. RICHARDS, Gen. Mgr.'

"On the seventh of August, 1900, the North British Company wrote W. J. Colburn & Co. that the former had ceased to act as agents of the Traders Company, and had canceled the contract with the latter company on Friday, August 3, 1900, because the Traders had failed to fulfill conditions precedent in the nonpayment of the consideration agreed. The court of chancery appeals finds that up to this time there had been no claim on the part of the North British Company that it was simply acting as agent of the Traders Company, but on the con-

trary, it had notified the general agents at Chattanooga that the North British had reinsured all outstanding liabilities of the Traders."

The opinion holds that: "The fact that there was a condition in said contract, if such existed, was not made public, or known to any of complainants, until the receipt of the letter to Colburn & Co. advising them that the North British Company had ceased to act as agent of the Traders Company, and had canceled said contract. In fact, all the policy holders, as far as the record discloses, were relying on the assurance of the North British Company that they had been reinsured, and that the solvency of said company was such that they would be protected.

"It is insisted by the North British Company that the directors of the Traders Company made false statements to the former in respect to the amount of returned premiums and its financial condition, and failed to make certain payments, which were conditions precedent to said contract. This fact, however, is established: that as early as June 15, 1900, the North British Company knew all the facts concerning the Traders Company, and that the schedules of the business of the latter company recently issued by it were not complete, and the full amount of premium to be paid to the North British had not been ascertained. Yet the North British granted an extension of time to the Traders Company. Not only this, but it dealt with the policy holders on the basis of a valid contract, without any conditions whatever. We

also find that Colburn & Co. paid the Traders Company premiums for a number of complainants and others, amounting to several hundred dollars, after the time when the North British contracted with the Traders, and agreed to and did reinsure its policy holders. It also appears that funds and accounts were in the hands of Colburn & Co. due the Traders Insurance Company after May 1, 1900, which were held, as appears, until after the reinsurance of the Traders' liability in the North British Company, which were remitted to the Traders.

"Also, that Colburn & Co. paid all returned premiums when policies in the Traders Company were ordered canceled by the North British Company. Among these was the claim of W. T. Crutchfield in the latter company, which was ordered canceled by letter to North British dated July 24, 1900. The returned premiums were paid by Colburn & Co. W. J. Colburn & Co. forwarded the letter of August 7, 1900, from the North British Company, denying liability on these Traders policies, to Insurance Commissioner Craig, who wrote the North British Company, and demanded that it retract this denial of liability, or he would revoke its license, by a date named.

"Thereupon the North British Company brought suit against the insurance commissioner in the chancery court at Nashville, Tennessee, seeking to enjoin his proposed action; but the supreme court finally dismissed

said bill, and sustained the insurance commissioner."
*North British Company* v. *Craig*, 106 Tenn., 621, 62 S.
W., 155.

The court of chancery appeals also finds that: "As
the result of the contract of April 27, 1900, the Traders
Company went out of business, and all of its assets
passed into the hands of the North British Company,
and that the latter assumed the fire risks of the Traders,
and sent its special agent to Chattanooga, who informed
W. J. Colburn & Co. that the North British Company
had reinsured all the liabilities of the Traders, and that
the North British Company realized out of the assets of
the Traders about $85,000 (its entire assets)', and paid
losses of the Traders Company, with knowledge of its in-
solvency."

It should have been stated that the court of chancery
appeals found that the North British Company made
several extensions to the Traders Company on pay-
ments due under said contract from May 31 to July 26,
1900, and at least two of these payments were made
after the time limits had expired by the terms of the ex-
tension agreement.

It is unnecessary to quote further from the elaborate
findings of the court of chancery appeals, since it is be-
lieved that the quotations made are sufficient to raise
the question of law propounded on the appeal of the
North British Company. The fundamental proposition
advanced on its behalf is that the contract of April 27,
1900, between it and the Traders Insurance Company,

was, in legal contemplation, a contract of reinsurance, and that its interpretation and effect must be governed by the rules of law applicable to that peculiar form of insurance. Reinsurance is defined to be "insurance by the first insurer of the whole or some part of his interest in the risk created by his contract of insurance;" or, as it is otherwise defined, "It is the contract that one insurer makes with another to protect the first from a risk he has already assumed." 24 Am. & Eng. Encyc. of Law (2 Ed.), p. 248; *Iowa Ins. Co.* v. *Eastern Ins. Co.*, 64 N. J. Law, 343, 45 Atl., 762.

The general rule is that "the ordinary contract of reinsurance operates solely between the insurer and the reinsures, and creates no privity whatever between the reinsurer and the person originally insured. The contract of insurance and that of reinsurance remain totally distinct and unconnected, and the reinsurer is in no respect liable, either as surety or otherwise, to the person originally insured." 24 Am. & Eng. Encyc. of Law (2 Ed.), p. 249, citing numerous cases.

To the same effect is our own case of *Royal Insurance Company* v. *Vanderbilt Insurance Company*, 102 Tenn., 267, 52 S. W., 168.

But an exception to this general rule is also well established—that a direct liability may be incurred by the reinsurer to the originally insured if the intention to create it sufficiently appears from the contract of reinsurance. 24 Am. & Eng. Encyc. of Law (2 Ed.), p. 249.

It is further said in this valuable work that: "The

general rules of construction applicable to contracts and written instruments apply to contracts and policies of reinsurance. A contract of this character, like any other contract, depends upon the intention of the parties, to be gathered from the words used in the instrument, taking into consideration, when the meaning is doubtful, the circumstances attending the transaction. The court should give to the instrument a reasonable and sensible construction, and one which appears to conform the nearest to the justice of the case, and the purpose which the parties meant to accomplish. The contract should receive a construction that will be uniform throughout the various transactions in which it is involved. It must be so construed as to have a certain meaning in one way for the purpose of collecting premiums, and in another for the purpose of determining liability." 24 Am. & Eng. Encyc. of Law (2 Ed.), p. 254.

In the same work it is said:

"While, as a general rule, the liability of the reinsurer is solely to the reinsured, it is competent for the reinsurer to make the reinsurance contract inure directly to the benefit of the party originally insured, and in jurisdictions where a third party is allowed to maintain an action on a contract made for his benefit he may, in such a case, recover directly from the reinsurer. Thus where, in reinsuring risks for which policies are outstanding, the reinsurer contracts with the reinsured to assume the policies and to pay the holders thereof all such sums

as the reinsured may become liable to pay, the persons to whom these original policies are payable acquire a direct right of action against the reinsurer, and can sue in their own names, and recover upon the contract of reinsurance, and it is immaterial that they are not named in the policy or contract. . . . The holder of an original policy of insurance acquires a right of action on a contract of reinsurance where the original insurer sells its business and good will to another person, and the latter company, in consideration thereof, reinsures the risks of the first company, and contracts to pay the losses under the first company's outstanding policies." 24 Am. & Eng. Encyc. of Law (2 Ed.), p. 258; *Whitney* v. *Am. Ins. Co.,* 127 Cal., 464, 59 Pac., 897; *Alliance Mut. Ins. Co.* v. *Welch,* 26 Kan., 641; *Barnes* v. *Hekla Ins. Co.,* 56 Minn., 38, 57 N. W., 314, 45 Am. St. Rep., 438; *Glen* v. *Hope Mutual Ins. Co.,* 56 N. Y., 379; *Fisher* v. *Hope Mut. Ins. Co.,* 69 N. Y., 161; *Shoaf* v. *Palatine Ins. Co.,* 127 N. C., 308, 37 S. E., 451, 80 Am. St. Rep., 804; *Travelers' Ins. Co.* v. *Cal. Ins. Co.,* 1 N. D., 151, 45 N. W., 703, 8 L. R. A., 769; *Johannes* v. *Phenix Ins. Co.,* 66 Wis., 50, 27 N. W., 414, 57 Am. Rep., 249; *Hunt* v. *Ins. Co.* (N. H.), 38 Atl., 145, 38 L. R. A., 514, 73 Am. St. Rep., 602; *Chalaron* v. *Ins. Co.* (La.), 21 South., 267, 36 L. R. A., 742; *Gifford* v. *Corrigan,* 117 N. Y., 257, 22 N. E., 756, 6 L. R. A., 610, 15 Am. St. Rep., 508.

In the case of *Johannes* v. *Phenix Insurance Company,* 66 Wis., 50, 27 N. W., 414, 57 Am. Rep., 249, the syllabus is as follows:

"The·plaintiff held a policy of insurance in the standard Fire Office of London. That company sold to the Phenix Insurance Company its entire business in the United States, and the good will thereof, together with the other property, and the latter company, in consideration thereof, reinsured all the risks of the Standard Company upon property situated in the United States, and agreed that all losses arising under the policies of that company on such property should thereafter be borne by the Phenix Company, and be paid, satisfied, and discharged by it." Held, that plaintiff could maintain an action against the Phenix Company for a loss arising under his policy.

In the course of the opinion the court said:

"The contention is that the contract between the two companies is confined strictly to them, and that the plaintiff, under his policy issued by the Standard, has no privity in the contract made by the Phenix, and can maintain no action thereon against the Phenix; in other words, that it was strictly a contract of reinsurance by the Standard Company solely for its own benefit, and not for the benefit of any of its then existing policyholders in the United States. . . . But in the case before us the contract between the defendant companies is, as it seems to us, something more than a reinsurance. By that contract the Standard Company sold and turned over to the Phenix its entire business, and the good will of that business in the United States, together with a large amount of bonds and other property, in consider-

ation of which the Phenix thereby reinsured all the risks of the Standard Company upon property situated in the United States, . . . and agreed that all losses arising under the policies of the said defendant Standard Fire Office, Limited, upon property situated in the United States of America, should, after that time, January 1, 1884, be borne by the said Phenix Insurance Company, and should be paid, satisfied, and discharged by it; . . . and agreed that the loss of this plaintiff arising thereunder should be borne, paid, satisfied, and discharged by said Phenix Insurance Company, which thereupon became the owner of the good will, original documents, and books of its codefendant herein, the Standard Company, relating to the risks aforesaid, and assumed control of the same and of the business pertaining to said risks, policies, and losses. Such are the alleged terms of the contract we are required to construe. The losses thus arising under the policies could only be borne, paid, and discharged by the Phenix in a direct transaction with the policy holders. Even a payment by it of the amount of the loss of the Standard Company would not satisfy or discharge the plaintiff's claim for such a loss on his policy. That could only be done on payment to the plaintiff. It seems to us that by the terms of the contract as alleged, the Phenix, in effect, thereby assumed the risk covered by each policy, and agreed to pay any loss arising under each policy. The mere fact that the plaintiff was not named in the con-

tract does not preclude him from maintaining an action upon the contract."

*Shoaf* v. *Palatine Ins. Co.,* 127 N. C., 308, 37 S. E., 451, 80 Am. St. Rep., 804.

In *Barnes* v. *Hekla Fire Insurance Company,* 56 Minn., 38, 57 N. W., 314, 45 Am. St. Rep., 438, the principle that a simple contract of reinsurance between insurance companies is a contract of indemnity, and is solely for the benefit of the latter, is recognized, but it is said: "Where such a contract also includes a promise or agreement to assume and pay the losses of policy holders, actions in case of loss may be brought by them directly against the reinsurer upon such promise or undertaking."

In *Whitney* v. *American Insurance Company,* 127 Cal., 464, 59 Pac., 897, the same doctrine is thus stated in the syllabus:

"The assumption of all the fire insurance policies of an insurance company by a new company is much broader than a mere naked contract of mere reinsurance under the Code; and a holder of a policy issued by the former company sufficiently manifests his consent to the contract by which the payment of the policy is assumed by bringing an action against the new company upon the policy. The law creates the privity necessary for the maintenance of the action."

In that case the court said: "The facts in this case show the contract in question to be much broader than a mere technical reinsurance."

Mr. Wood, in his work on Insurance, says: "The question as to whether the insured may sue the company on the risk reinsured depends upon the circumstances whether in the State where the policy was issued the person for whose benefit it was made may bring suit thereon, although not named in the contract, and whether it was the intention of the parties that the insurance company should stand in the place of the insurer with the assured."

What, then, is the application of these principles in the present case? The court of chancery appeals finds:

"(1) The Traders Fire Insurance Company went out of business, and all of its assets went into the hands of the North British & Mercantile Company, and the latter assumed the fire risks of the former, and sent its special agent to Chattanooga, who informed W. J. Colburn & Co. that the North British Company had reinsured all the liabilities of the Traders.

"(2) The Traders Company went out of business—a fact known to the North British Company—and under the contract of April 27 paid to the latter company all of its assets, amounting to about eighty-five thousand dollars. The North British Company also paid the losses of the Traders Company with knowledge of its insolvency.

"(3) In this case, without consulting the policy holders of the Traders Company, the North British Company did assume all risks of the Traders Company, and occupied by their act the relations that previously existed

between the Traders Insurance Company and its policy holders, and thereby became liable to said policy holders, and can be proceeded against by them just as they could have proceeded against the Traders Company. The North British Company cannot make a contract agreeing to reinsure these policy holders, and then, because the contract is not as good as they thought, repudiate it to the detriment of the rights of these complainants.

"(4) According to the proof and facts in this case the North British Insurance Company did agree and promise to assume all the risks and liabilities of the Traders Company, took the assets of the latter, and on account of its alleged default of a condition of which the policy holders knew nothing, and when it is rendered insolvent, it shields itself behind the contention that complainants cannot sue them. This promise or contract was made upon sufficient consideration, and for the benefit of these complainants, policy holders of the Traders Company, although they were not parties to the contract. This contract between these two insurance companies was based upon a consideration, and a part of it was for the benefit of these complainants and others who were not parties to it, and hence can be enforced.

"(5) The agreement of reinsurance was not for a part, but the whole, of the risks taken previously by the Traders, and the effort is to bind the reinsurers to make good the losses of the original insurer to its policy holders.

"(6) In the case at bar it was a reinsurance of all the

Traders policies, and an assumption by the North British Company of all liabilities, and was a promise made by it to the Traders, based upon a sufficient consideration, for the benefit of its policy holders, who were not parties to the contract.

"(7) Admitting, however, that the contract of April 27, 1900, was a conditional one, as insisted, has not the North British & Mercantile Company, by its conduct, waived the same, by granting the extensions hereinbefore noticed, and by the statements of its managers and agents to policy holders, and publications, and its conduct of the business of the Traders, and its assurances to them? Said company held itself out to the public by letters, the acts of its agents, and its own conduct, as assuming all risks, without condition, and by so doing waived any that might have existed.

"(8) The fact that there was a condition in said contract, if such existed, was not made public, or known to any of the complainants, until the receipt of the letter attempting to cancel the contract. In fact, all the policy holders, as far as the record discloses, were relying on the assurances of the North British Company that they had been reinsured, and that the solvency of said company was such that they would be protected.

"(9) The fact is established that as early as June 15, 1900, the North British Company knew all the facts as to the insolvency of the Traders Company, and that the schedules of the business of the latter company were not

completed, and the full amount of premiums to be paid the North British had not been ascertained; yet they gave an extension of time to the Traders Insurance Company, and dealt with the policy holders on the basis of a valid contract, without any condition whatever."

Upon the facts found by the court of chancery appeals, which are conclusive and binding upon this court, we are constrained to hold that the contract of April 27, 1900, between the Traders and the North British Companies was not an ordinary contract of reinsurance. It was rather an assumption on the part of the North British Company of all of the outstanding liabilities against the Traders Company preparatory to the retirement of the latter permanently from business. As evidence of this fact, the Traders Company, in consideration of this assumption of liability on the part of the North British Company, transferred to the latter company its entire assets, amounting in value to about the sum of $85,000. It was not contemplated by either party at the time of the execution of this contract that the Traders Company would go forward with its business, collecting premiums and adjusting losses in the ordinary way. It was known to be wholly insolvent, and the acceptance by the British Company of the entire assets of the former had disabled it from the fulfillment of its contracts of insurance with its numerous policy holders. While the alleged contract of reinsurance provides on its face that it is to be null and void upon the failure of the Traders Company to pay the deferred payments, yet the outstanding policy holders who had been deprived of the assets of the Trad-

ers Company as a security and indemnity for their individual losses could not be prejudiced by such a conditional defeasance whereof they had no knowledge. In other words, the North British Company, by taking over the entire assets of the Traders Company, had disabled the latter company from complying with its contracts made with its policy holders, and the British Company cannot be heard not to say that it is not liable to these policy holders.

We are not advised of any case which adjudges that facts like these constitute a technical reinsurance contract, and that policy holders, by reason thereof, are remediless against the guarantying company, and must look for indemnity against an insolvent company, whose entire assets have been appropriated by the reinsuring company, and the former thereby rendered permanently insolvent. In Tennessee the doctrine is firmly established that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party. *County v. The Railroad,* 14 Lea, 525; *McCarty v. Blevins,* 5 Yerg., 196, 26 Am. Dec., 262; *Moore v. Stovall,* 2 Lea, 543; *O'Connor v. O'Conner,* 88 Tenn., 76, 12 S. W., 447, 7 L. R. A., 33; *Thompson v. Thompson,* 3 Lea, 126; *Mills v. Mills,* 3 Head, 711; *Railroad v. Houston,* 85 Tenn., 224, 2 S. W., 36.

The result is the decree of the court of chancery appeals must be affirmed.