The County of Giles, and Jack's Cookie Corporation, a Corporation organized under the laws of Ohio, domesticated and doing business in Giles County, Tennessee, Appellants,

*v.*

First U. S. Corporation, a Tennessee Corporation, with an office in Shelby County; Bill F. Sutton, a resident of Shelby County; George Lenox, a resident of Shelby County; and Frank L. Milligan, a resident of Jefferson County, Appellees.

445 S.W.2d 157.

(*Jackson,* April Term, 1969.)

Opinion filed August 1, 1969.

D. C. LEE, Pulaski, for Giles County, JAMES O. MOORE, Charlotte, N. C., of counsel.

MOORE & VAN ALLEN, Charlotte, N. C., for Jack's Cookie Corp.

C. THOMAS CATES, *Memphis*, of counsel,, BURCH, PORTER & JOHNSON, Memphis, for First U. S. Corp., George Lenox and Frank L. Milligan.

EDWARD G. GROGAN, Memphis, of counsel, HEISKELL, DONELSON, ADAMS, WILLIAMS & WALL, Memphis, for Bill F. Sutton.

348

Mr. Justice Dyer delivered the opinion of the Court.

This cause comes to this Court from the action of the chancellor in sustaining one ground of the demurrer filed by appellees.

The issues of this case arise out of the issuance and sale of industrial bonds by Giles County, Tennessee. These bonds were issued pursuant to two statutes; that is, Chapter 137, Public Acts of 1951, now, as amended, carried as T.C.A. sec. 6-1701 et seq., and Chapter 209, Public Acts of 1955, now, as amended, carried as T.C.A. sec. 6-2901 et seq. These statutes declare the relief of conditions of unemployment with the evils attendant thereto to be a public purpose. To carry out this public purpose the statutes provide a scheme whereby the various cities and counties of the State are authorized to issue interest bearing bonds with the proceeds to be used to construct, improve or extend an industrial building to be leased to a private industry thereby creating jobs for the unemployed. This is the sole purpose of these statutes.

On June 1, 1962, Giles County, in order to construct an industrial building to be leased to a private industry thereby creating jobs and relieving conditions of unemployment in the county, pursuant to these statutes authorized the issuance and sale of $2,500,000.00 in interest bearing bonds. On the same day (June 1, 1962), Giles County entered into a contract with Jack's Cookie Corporation whereby Jack's Cookie Corporation agreed to lease said building and operate therein a private industry. Jack's Cookie Corporation further bound itself to pay monthly rental necessary to retire the bonds and interest thereon. Also, on this same day (June 1, 1962), in furtherance of the matter, Giles County entered into a contract with First U. S. Corporation whereby First U. S. Corporation was to act as fiscal agent for Giles County in the preparation and recommendation of the most marketable scheme of financing and assist in the sale of the bonds.

The original bill, admitted here on demurrer, alleges First U. S. Corporation and the named personal defendants as officers, shareholders and directors by their wrongful acts, misrepresentations and breach of their duty, illegally retained in excess of $500,000.00, represented by negotiable bearer "supplemental coupons" which accompanied the issue and the taking of certain discounts.

The ground of the demurrer sustained by the chancellor is as follows and presents the only issue here on appeal:

Jack's has no right to sue because Jack's was not in privity of contract with any of the defendants.

T.C.A. sec. 6-1715 provides as follows:

The governing body of a municipality issuing bonds pursuant to this chapter shall prescribe and collect rentals for industrial buildings and shall revise same from time to time whenever necessary so that the income and revenues to be derived from such rentals will always be sufficient to pay when due all bonds and interest thereon for the payment of which such revenues are pledged, including reserves therefor.

T.C.A. sec. 6-2912 provides as follows:

The governing body of a municipality issuing bonds pursuant to this chapter shall prescribe and collect rentals for industrial buildings and shall revise same from time to time whenever necessary so that the income and revenues to be derived from such rentals will always be sufficient to pay when due all bonds and interest thereon for the payment of which such revenues are pledged, including reserves therefor, and to provide for all expenses of operation, maintenance, and depreciation charges of such industrial buildings. All funds arising under the provisions of this chapter shall be kept separately and apart from other funds of the county, city or town, as the case may be.

█ The contractual arrangements between Giles County and Jack's Cookie Corporation are governed by the statutes under which the bonds were issued. Under the above copied sections of the Code it is mandatory upon Giles County to prescribe and collect of Jack's Cookie Corporation rentals necessary to pay the bonds and interest thereon, and Jack's Cookie Corporation by the statute is obligated to pay the required amount. These statutes also make it mandatory upon Giles County to revise the rentals whenever necessary to pay the bonds and interest thereon; Jack's Cookie Corporation would also be bound to pay any necessary revision of the

rentals. We construe the words "shall revise same from time to time whenever necessary" to mean revision either upward or downward as the payment of the bonds and interest thereon require. It is manifest that this is to be a nonprofit enterprise with the industrial building to be acquired at the least possible cost to both the county and the industry.

Then, under the allegations of the original bill, Jack's Cookie Corporation due to the alleged wrongful acts of First U. S. Corporation and the named personal defendants has already been required to pay monthly rentals all in excess of what otherwise would have been required and unless relieved in this suit will be bound to continue to make said payments.

■ In Tennessee, the doctrine is firmly established that the beneficiary of a contract, although not an expressly designated party thereto, may maintain an action in his own name against the promisor, where the promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party. *Ruohs v. Traders' Fire Insurance Co.,* 111 Tenn. 405, 78 S.W. 85 (1903); *Title Guaranty & Trust Co. v. Bushnell,* 143 Tenn. 681, 228 S.W. 699, 12 A.L.R. 1512 (1920).

■ Under the facts as alleged we think Jack's Cookie Corporation would be a third party beneficiary to the contract between First U. S. Corporation and Giles County. By virtue of the statute under which the bonds were issued if there be any recovery by appellants it will accrue to the benefit of Jack's Cookie Corporation, since such will reduce Jack's Cookie Corporation's statutory obligation to pay all the cost of the bonds.

■ Jack's Cookie Corporaion's suit can also be sustained as a quasi contract action. In his treatise on the

law of quasi contracts, William A. Keener, Professor of Law and Dean of the Faculty of the Law at Columbia College (1893), at page 16, in discussing the scope of quasi contracts says:

Quasi contracts may be said in general to be founded, (1) upon a record. (2) upon a statutory, or official, or customary duty. (3) upon the doctrine that no one shall be allowed to enrich himself unjustly at the expense of another.

In support of the second proposition *Inhabitants of Milford v. Commonwealth,* 144 Mass. 64, 10 N.E. 516, is cited. In that opinion, the court said:

A contract may be expressly made; or a contract may be inferred or implied, when it is found that there is an agreement of the parties, and an intention to create a contract, although that intention has not been expressed in terms of contract. In either case there is an actual contract. But a contract is sometimes said to be implied when there is no intention to create a contract, and no agreement of parties, but the law has imposed an obligation which is enforced as if it were an obligation arising ex contractu. In such a case there is not a contract, and the obligation arises ex lege.

In selections from Williston on Contracts (Rev.Ed.), Williston & Thompson, in Section 3, page 10, it is said:

It is also true that quasi contractual obligations are not so universally based on unjust enrichment or benefit as is sometimes supposed. There are many cases where the law enforces in a contractual action a duty to restore the plaintiff to a former status—not merely to surrender the benefit which the defendant has received. This is true wherever the plaintiff has a right

to the rescission of a transaction and restitution because of the defendant's wrong, whether fraud, duress, or breach of contract * * *.

So, since under T.C.A. sec. 6-2912 Jack's Cookie Corporation, pursuant to the statutory scheme, has the right to have the rent it must pay determined on the basis of actual cost, free from illegal, false, or fraudulent padding, it has an interest in the subject matter which it has the right to call on equity to protect.

■ Again, since the statutory schemes under which the evidences of indebtedness were issued, give Jack's Cookie Corporation an actual interest in the subject matter, the chancellor should have looked through the form to the substance and should have held that defendants hold the evidences of indebtedness sued for, and the money already received as on a trust in invitum or a trust ex maleficio.

■ It is a maxim that equity delights to do complete justice, and not by halves. This maxim has grown out of the desire of the chancery court to so completely decide every matter involved in the litigation that there will be no roots of controversy left out of which other suits may spring. Hence, the Court requires that all persons interested, either legally or beneficially, in the subject matter shall be made parties to it, either as complainants or as defendants, so that there may be a decree that will bind them all. By this means, the court is enabled to make a complete decree between all the parties interested in the controversy, and thus not only to prevent future litigation by taking away the necessity of a multiplicity of suits, but to make it perfectly certain that no injustice has been done to any party interested in the subject mat-

ter of the suit. 1 Gibson's Suits in Chancery, Section 47, p. 58, and cases there cited.

 This generally is qualified by certain well recognized rules which, as applicable are: (1) that one must ordinarily be possessed of the remedial interest in the cause of action asserted which the law or the forum may recognize and enforce in order to be a party-complainant to a suit. This interest must be a real, direct, present and substantial right or interest in the subject matter of the controversy, though remote and relatively small. The test is, of course, the interest or claim of interest. A leading principle for determining the proper parties to a suit is, that if the decision of any part of the subject matter of the suit will affect the present or contingent rights or interests of any person or persons, or, if a complete decree cannot be made upon all the matters involved without having the particular parties before the court, they are proper parties.

██ Since under the statutory schemes under which this entire transaction arose, Jack's Cookie Corporation has a real, present interest in the rent cost of the building, and the right to have that cost determined upon a consideration of only legitimate items of expense, it certainly has such an interest in the subject matter as sustains its right to be a party.

Consider what the situation might be if Jack's Cookie Corporation were not allowed to continue in the suit as a party. Giles County could possibly recover and then decline to give Jack's Cookie Corporation the benefit of the recovery. This would, of course, necessitate another lawsuit, a suit whose issues could be disposed of in the present action. Or, suppose Giles County were to decide that since

the real beneficiary of the action is Jack's Cookie Corporation, and that it is going to get nothing out of any recovery which may be made, that it does not care to go on with the suit, would anyone say under such circumstances that although Jack's Cookie Corporation has the statutory right to have its rent determined on the basis of actual and not fraudulent cost, still it has no such interest as would enable it to maintain a suit against both Giles County and the present defendants? Of course not. Then, why cannot Jack's Cookie Corporation interest in the subject matter be settled now, once and for all? We think it can and accordingly reverse the chancellor and remand the case for further proceedings.

BURNETT, CHIEF JUSTICE, and HUMPHREYS, JUSTICE, concur.

CRESON and CHATTIN, JUSTICES, dissent.

MR. JUSTICE CRESON (dissenting).

I am unable to agree with the opinion of the majority in this case; and am authorized to say that Mr. Justice Chattin joins in this dissent.

As we view this case, its factual essence and the legal consequences are as hereinafter stated.

This cause arises out of two simultaneous issues of industrial bonds by complainant Giles County in 1962.

By original bill complainants Giles County and Jack's Cookie Corporation seek recovery of $426,875.00, represented by negotiable bearer "supplemental coupons" which accompanied the issue, and of $125,000.00 for "discounts" allegedly wrongfully withheld. The defendants are First U. S. Corporation, the fiscal agent of Giles County for the sale of both bond issues, and Bill F.

Sutton, George L. Lenox and Frank L. Milligan, individuals who were alleged to be the principal officers, shareholders and directors of First U. S. Corporation at the time of occurrences complained of.

The original bill was filed in Part II of the Chancery Court of Shelby County. Defendants First U. S. Corporation, George L. Lenox and Frank L. Milligan demurred jointly; and defendant Bill Sutton filed a separate demurrer which is of substantially the same tenor and effect as that interposed by the other defendants.

Giles County entered into a "fiscal agents agreement" with defendant First U. S. Corporation, on June 1, 1962. For a fee of 2% of the aggregate bond issue, or $50,000.00, First U.S. Corporation agreed to:

"(1) Assist in the sale of the bonds; and

(2) Assist a national bond counsel and the purchaser in drawing up the resolution and bond form; and

(3) Assist the purchaser with any information on this project that will further help the purchaser sell the bonds; and

(4) Obtain bids from and work with the printer in getting the bonds printed and delivered; and

(5) Assist the engineers, attorney, and the Municipal Officials in setting up a feasible project; and

(6) To prepare the most marketable amortized scale for the issue of bonds; and

(7) To handle the delivery of the bonds to the purchaser First U. S. Corporation also agrees to do all possible to expedite delivery of the bonds.

* * *"

Defendant First U. S. Corporation prepared and presented a plan of bond financing. Under this plan, in 1962, complainant Giles County issued negotiable "industrial revenue building bonds," payable to bearer, in the amount of $1,250,000.00 and negotiable "industrial revenue and tax deficiency bonds," payable to bearer, also in the amount of $1,250,000.00; the "revenue bonds" issued with attached negotiable bearer "regular coupons" having interest rates varying from $3\frac{1}{4}\%$ to $5\frac{1}{4}\%$; the "tax deficiency bonds" issued with attached negotiable bearer "regular coupons" having interest rates varying from $2\frac{3}{4}\%$ to $4\%$.

Each issue was accompanied by unattached negotiable "supplemental coupons" payable to bearer. The "supplemental coupons" bear interest rates which vary in accord with the difference between the interest rate of the "regular coupons" and $6\%$.

The proceeds of the bond issues were to be used for construction of an industrial building to be leased by complainant Jack's Cookie Corporation. On June 1, 1962, Giles County leased the industrial building and its site to Jack's Cookie Corporation for a term of thirty years, and also granted certain options for renewal of the lease. Jack's Cookie Corporation covenanted to pay monthly rentals sufficient to service bonded indebtedness incurred by Giles County in constructing the industrial building and equipping it with required machinery.

Giles County entered into an "indenture of mortgage and deed of trust" with the Union Planters National Bank of Memphis, Tennessee. Payment of principal and interest on each bond issue was secured by a mortgage on the industrial building. Payment to holders of the "tax deficiency bonds" and coupons was additionally secured

by direct tax on all taxable property in Giles County levied June 21, 1962, but reduced by so much as the rentals to be paid by Jack's Cookie Corporation would suffice to pay principal and interest.

The total of all amounts to accrue in connection with the bond issues is alleged to be $2,715,716.30, of which amount the interest to be paid on the "supplemental coupons" is $426,875.00.

The original bill alleges (1) that defendant First U. S. Corporation sold the bonds with the attached "regular coupons" but without the detached "supplemental coupons"; (2) that the "supplemental coupons" were distributed to the individual defendants "for less than an adequate consideration"; (3) that the bonds were sold at their face value and that defendant First U. S. Corporation retained discounts of $62,500.00 for each issue, or a total of $125,000.00 for its own use.

The original bill insists that defendant First U. S. Corporation has breached its agreement with Giles County, in that (1) the defendant corporation failed to recommend a plan of bond financing which would protect the interest of Giles County, and (2) the defendant corporation prepared a plan designed to provide fees and profits for the defendant corporation greater than the amount agreed upon. The bill further insists that the acts of the defendant corporation are attributable to the individual defendants because the individual defendants were in control of First U. S. Corporation at the time of the bond sale and because they acquiesced or participated in such acts.

The demurrers of the defendants insist that the original bill fails to allege any wrongful act or any damages sus-

tained by the complainants for which defendants may be liable to complainant Jack's Cookie Corporation. The grounds of the foregoing insistence, so far as Jack's Cookie Corporation is concerned, are as follows: (1) Jack's Cookie Corporation may not seek relief in this cause because the original bill reveals no privity of contract between Jack's Cookie Corporation and any of the defendants; and (2) complainants are not entitled to seek relief as against the individual defendants because neither complainant is in privity of contract with the individual defendants.

The cause was heard upon bill and demurrers. The demurrer as to Jack's Cookie Corporation was sustained. The demurrer as to Giles County was overruled. Jack's Cookie Corporation excepted to the decree of the Chancery Court, and an appeal was prayed and granted.

A single error has been assigned in this Court:

"The Chancellor erred in sustaining so much of the defendants' Demurrers as contended that Jack's Cookie Corporation is not a proper party to the Bill on the grounds that there were no averments of the defendants' bad faith dealings with Jack's Cookie Corporation and that Jack's Cookie Corporation was not in "privity of contract" with the defendants, the rationale for the Chancellor's action being that there are mutual obligations in every contract, implied or otherwise, and Jack's Cookie Corporation had no obligations to the defendant First U. S. Corporation."

The case is before this Court on the appeal of Jack's Cookie Corporation from the decree of the trial court sustaining the demurrer as to it. All that is said herein is directed only to those allegations of the original bill

which endeavor to assert a cause of action by Jack's Cookie Corporaion against the defendants.

Complainant Jack's Cookie Corporation advances three theories on which it insists recovery may rest: (1) the circumstances surrounding the relationship of the parties give rise to an implied contract between Jack's Cookie Corporation and First U. S. Corporation, which should be enforced as against the defendants; (2) the "fiscal agents agreement" between Giles County and First U. S. Corporation creates a right, or imposes a duty, in favor of Jack's Cookie Corporation, and, therefore, Jack's Cookie Corporation, as a third party beneficiary of such contract, may, for its benefit, enforce the promises of First U. S. Corporation, and (3) First U. S. Corporation holds the profits in excess of the agreed fee under constructive trust for the benefit of Jack's Cookie Corporation.

Close examination of the record in this cause reveals that Giles County occupies the central position in the problems which have arisen out of these bond issues. Giles County initiated the series of contracts here under scrutiny with a single purpose: the attraction of industry to the County. Availing itself of statutes permitting issuance of industrial bonds, T.C.A. sec. 6-1701 et seq., and T.C.A. sec. 6-2901 et seq., the County contracted with First U. S. Corporation to arrange a plan of bond financing and to assist in the sale of such bonds. The County set up other financial arrangements with the Union Planters National Bank and leased the industrial building to be constructed with the proceeds of the bonds to Jack's Cookie Corporation. These financial arrangements and the contracts which evidence them indicate that the par-

ties here involved are connected only by virtue of their respective contractual undertakings with Giles County.

Complainant Jack's Cookie Corporation insists that an "implied contract" exists, or is to be found, as between it and defendant First U. S. Corporation.

The "implied" contract thus urged on this Court can only refer to a contract implied in law. Plainly, no contract can be implied in fact from the circumstances set out in the original bill.

Contracts implied in law or, as they are now sometimes referred to, quasi contracts, are created by law for reasons of justice; without any express assent by the party bound. The quintessence of such contracts is the inequitable retention of a benefit. *Paschall's, Inc. v. Dozier* (1966), 219 Tenn. 45, 407 S.W.2d 150.

We are unable to agree with the insistence of complainant Jack's Cookie Corporation that the circumstances surrounding the relationship between Jack's Cookie Corporation and Giles County, and between Giles County and First U. S. Corporation, are such that a contractual obligation is to be implied as running from defendant First U. S. Corporation to Jack's Cookie Corporation. The covenant of the latter corporation to pay monthly rentals sufficient to service the bonded indebtedness of Giles County has not conferred a "benefit" on First U. S. Corporation as the agent of Giles County in the sale of the bonds.

Complainant Jack's Cookie Corporation next insists that, as a third party beneficiary of the contract between First U. S. Corporation and Giles County, it may recover for the breach of the promise of First U. S. Corporation to prepare a plan of financing for the bond issues—that

362

is, that the plan prepared was, in fact, inimical to the interests of Giles County.

In Tennessee, the doctrine is firmly established that the beneficiary of a contract, although not an expressly designated party thereto, may maintain an action in his own name against the promisor, where the promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party. *Ruohs v. Traders' Fire Insurance Co.* (1903), 111 Tenn. 405, 78 S.W. 85; *Title Guaranty & Trust Co. v. Bushnell* (1920), 143 Tenn. 681, 228 S.W. 699, 12 A.L.R. 1512. However, in Tennessee the above-described doctrine does not extend to an incidental beneficiary; that is, a party having some association with the general subject matter out of which the contract in question arises, and who only coincidentally may be affected detrimentally by its breach *Willard v. Claborn* (1967), 220 Tenn. 501, 419 S.W.2d 168.

It is here that the inherent frailty of the legal logic of complainant Jack's Cookie Corporation broaches the surfaces. Jack's Cookie Corporation is in no legal or equitable sense a third party beneficiary of the contractual obligation between First U. S. Corporation and Giles County. Under the original bill, it is clear that its so-called rights could arise from the contract in no other way than as a coincidence of the breach thereof.

Complainant Jack's Cookie Corporation finally insists that defendant First U. S. Corporation has unconscionably profited from its contractual relationship with Giles County through inequitable conduct and breach of its duty to prepare a plan of bond financing protective of the interests of Giles County; and, thus, that First U. S. Corporation holds its profits over and above the contrac-

tual fee under constructive trust for the benefit of the complainants.

Inherent in this insistence is the proposition that Jack's Cookie Corporation is, or may be declared to be, a constructive cestui que trust. Whatever may be the status and right of Giles County in this connection, upon which we do not pass, it becomes clear that on the record here, Jack's Cookie Corporation does not have that proprietary interest, legal or equitable, in any trust res. Such is essential under the law of trusts to maintain the position taken.

> "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Scott on Trusts, p. 3103 (2d Ed.—1956)

> "Thus if the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff. So also where the defendant wrongfully uses the property of the plaintiff in making a profit, he can be compelled to surrender the profit. The defendant will not be permitted to retain the profit in such cases even though there has been no loss to the plaintiff." Scott on Trusts, p. 3107 (2d Ed.—1956)

Complainant Jack's Cookie Corporation places heavy reliance on the case of *McNeill v. Dobson-Bainbridge Realty Co., Inc.* (1946), 184 Tenn. 99, 195 S.W.2d 626. The case cited is readily distinguishable from the instant case as it is presented to us on this appeal.

However, it must be pointed out that the statement in that opinion of the essentials to creation of a constructive

trust as between principal and agent spells the doom of this appeal. This is not to say at all that this opinion may not be quite pertinent to the case of Giles County as complainant, at such time as that case may be developed.

It seems to us that in nowise can it be said that complainant Jack's Cookie Corporation has either the status or right delineated above.

It follows that we would sustain the demurrer as to Jack's Cookie Corporation and affirm the decree of the Court below in this respect.

CHATTIN, JUSTICE, concurs.