## Bertha L. Weil, Appellee, v. Federal Life Insurance Company, Appellant.

## Gen. No. 18,014.

1. Municipal court of chicago, § 27*—*what bill of exceptions should contain.* Where the rules of the Municipal Court of Chicago are made part of the bill of exceptions and are certified by the judge, a motion to strike such rules from the bill because they were not offered in evidence on the trial cannot be sustained, since whatever is material to the decision of the Municipal Court, and which that court is required to take judicial notice of, should be presented to the reviewing court.

2. Pleading, § 1*—*what term "practice" includes.* The term "practice" as used in section 34 of article IV of the Constitution of 1870, J. & A., p. 190, with reference to Municipal Courts, is broad enough to include pleadings.

3. Municipal court of chicago, § 5*—*what rules may be made.* Section 20 of the Municipal Court Act, J. & A. ¶ 3332, authorizes the Municipal Court to make rules which abandon or change the system and forms of pleading in use in courts of record.

4. Insurance, § 568*—*when statement of claim may be treated as declaration.* A statement of claim filed in the Municipal Court, setting forth insurance policies sued on, with averment stating that the defendant assumed the risks, the death of the assured, service of proof of death, performance of the conditions of the policies and failure of the defendant to pay the money due, states a complete cause of action and may be treated as a common law declaration; wherefore a contention that the plaintiff failed to file a declaration as required by section 28 of the Municipal Court Act, J. & A. ¶ 3340, cannot be sustained.

5. Insurance, § 705*—*what is essential to render contract of reinsurance effective.* Where an insurance company accepted the transfer to it of policies and securities of another company and thereby reinsured all the then living policy holders of such other company, *held* that neither such contract of reinsurance nor the statutes required any express acceptance of the reinsurance contract by such policy holders; and if any was contemplated it was such acceptance as would be implied from the failure of a policy holder to exercise his right to be transferred to some other insurance company.

6. Insurance, ¶ 347*—*what defenses are precluded by incontestable clause.* Where a clause in a certain insurance policy provides that it "shall be incontestable after one year from its date of issue,"

Weil v. Federal Life Ins. Co., 182 Ill. App. 322.

such clause precludes defenses of fraud or misrepresentation, such as a defense that the insured misrepresented the fact that he had been rejected by another insurance company.

7. PLEADING, § 153*—*what constitutes conclusion.* General statements of an affidavit of merits filed by an insurance company that the policies sued on were not guarantied or reinsured by such company, that they were of no binding force and that nothing was due the plaintiff, *held* mere conclusions.

8. MUNICIPAL COURT OF CHICAGO, § 13*—*when affidavit of merits may be stricken.* An affidavit of merits which does not set up a good defense is properly stricken.

9. DAMAGES, § 191*—*when court may assess.* In an action on insurance policies where the damages rest purely in computation and no evidence is required, the amount being undisputed, it is not reversible error for the court to assess the damages, even though a jury is demanded in apt time.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 14, 1913. Rehearing denied October 28, 1913.

CHARLES A. ATKINSON and JOSEPH P. MAHONEY, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee; HENRY H. KENNEDY and WALTER BACHRACH, of counsel.

MR. PRESIDING JUSTICE F. A. SMITH delivered the opinion of the court.

Appellee brought two actions against appellant on March 3, 1911, in the Municipal Court of Chicago. Each action was brought on a policy of life insurance for $5,000, and statements of claim were filed in each case on the same day. The statements of claim were the same in both suits with the exception of the numbers of the policies declared on. Subsequently, by leave of court, an amended statement of claim in each case was filed, and the causes were consolidated by order of court and thereafter formed but one case.

The defendant insurance company, appellant here, filed an amended affidavit of merits on June 6, 1911.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

This affidavit was stricken from the files on motion and an order of default was entered, and the court assessed the plaintiff's damages at $10,133.33, and entered judgment for that amount in favor of the plaintiff and against the defendant.

The amended statement of claim in each case is stated in substance later in this opinion. It is alleged that it was provided in said policy that it should be indisputable after one year from date of issue provided the premiums were duly paid as provided in the policy, and provided if the age of the assured had been misstated, the amount payable thereunder would be such as the premiums paid would have purchased at the correct age. To the amended statement of claim in each case the defendant filed an amended affidavit of merits, which is sworn to by T. W. Appleby, who states that he is the secretary of the defendant, and that he verily believes that the defendant has a good defense to this suit upon the merits as to the whole of plaintiff's demand; that the nature of the defense to the suit is that the two policies of insurance mentioned and described in plaintiff's amended statement of claim, issued to said Louis N. Weil by the Inter-State Life Insurance Company, were procured by the fraud, misrepresentations and deceit of said Louis N. Weil; that in order to procure said insurance said Louis N. Weil executed the usual form of application, partly written and partly printed, as required by the Inter-State, which application consisted of parts 1 and 2, and said part 1 contained the following declaration and agreement of said Louis N. Weil, to-wit:

"I hereby declare on behalf of myself and any person who shall have any interest in any policy issued under this application that all statements contained in Part 1 and Part 2 of this application by whomsoever they be written, are full, true and complete, and with the stipulated premiums shall be the sole consideration of the contract with the Company if any policy or policies be issued, reinstated or renewed thereon, and that if any concealment, or fraudulent or untrue statement

be made, said assurance shall be null and void, and all payments made or accepted on account thereof shall be forfeited to the Company except as provided in the policy.''

That in part 1 of the application said Louis N. Weil made certain statements and representations among which was the statement or representation that he had never been rejected by any life insurance company, meaning thereby that no life insurance company had at any previous time refused to insure his life; that said representation and statement was false and untrue and that said Louis N. Weil then and there well knew it to be false and untrue and then and there well knew the fact to be that he had prior to said day been rejected by at least two other life insurance companies, and that the said Louis N. Weil concealed from said Inter-State the fact that he had been rejected by two other life insurance companies, but that, nevertheless, said Louis N. Weil, made said false and untrue representation and statement with the intent that said Inter-State should be deceived and misled thereby and act thereon and he then and there well knew if he stated in said application that true and correct facts in the premises said Inter-State would also reject his application and refuse to insure his life; that defendant had no knowledge of the above fraud; that neither said Inter-State nor defendant became aware of the same until a long time subsequent to the day upon which said defendant and said Inter-State Life Insurance Company entered into said contract of reinsurance whereby defendant reinsured such policies of said Inter-State as had been lawfully issued and were in force, and which reinsurance would be accepted by the insured and no others; that said Louis N. Weil well knew of the execution and approval as aforesaid of said contract of reinsurance for a period of more than eight months prior to his death; and that during that time he gave to defendant no notice of his election or intention to accept said reinsurance, nor did he pay to de-

fendant any sum of money as premium upon said policies or either of them, nor did he at any time or in any way whatsoever communicate with said defendant in reference to said policies or either of them or the alleged insurance, nor did he do any act or thing whatsoever evidencing his acceptance of or assent to said reinsurance, and he did not assent to or accept the said reinsurance and neither of said policies was in force in defendant at the time of the death of said Louis N. Weil; that neither of said policies sued on in this action was reinsured or guarantied by the said defendant as by plaintiff alleged in her statement of claim and amendment thereto, and that neither of said policies was or is of binding force upon said defendant; that there is nothing due from said defendant to the plaintiff by reason of said two policies or either of them.

After the amended affidavit of merits of defendant, appellant, was stricken from the files as above stated, appellant elected to stand upon its amended affidavit of merits.

The only evidence introduced by appellee on the trial of said cause was the two policies above mentioned and the testimony of one witness as to the amount of interest from March 22, 1911, to the date of the trial, which was June 7, 1911.

A motion is made, which was reserved to the hearing, to strike from the bill of exceptions the copy of the rules of the Municipal Court of Chicago, for the reason that the same were not offered in evidence on the trial, and are not a part of the proceedings had upon the hearing of the cause in the Municipal Court. The sole ground urged by appellant in support of its motion to strike the rules from the bill of exceptions is that the rules were not offered in evidence on the hearing and are not a part of the proceedings had upon the hearing of the cause in the Municipal Court.

As a part of the bill of exceptions in this case and over the signature of the trial judge appears a pamphlet entitled "Rules of the Municipal Court of Chicago."

Following the rules, appears a certificate of the trial judge as follows:

"I do hereby certify that the foregoing pamphlet hereto attached and hereby made a part of this bill of exceptions contains all the rules of the Municipal Court of Chicago; that said rules were duly adopted in accordance with Section 20 of an act entitled 'An act in relation to the Municipal Court of the City of Chicago, approved May 18, 1905, in force July 1, 1905, and submitted to the voters of the City of Chicago at the election held November 7, 1905, and adopted, and that the adoption of said rules was accomplished by an order signed by a majority of the judges of the Municipal Court of Chicago and forthwith spread upon the records of the Municipal Court and were printed in pamphlet form at the expense of the City of Chicago; that the said rules of said Municipal Court of Chicago were in force at the time of the entry of the order and judgment in this court on the 7th day of June, 1911, and at the time all the proceedings in the above cause were had; the foregoing rules of the Municipal Court were not offered in evidence upon the trial of this cause.

Wm. N. Gemmill,

Judge."

Immediately after the foregoing certificate appears the usual certificate to a bill of exceptions signed by the trial judge.

The contention of appellant is that the bill of exceptions can only contain evidence formally introduced at the trial or hearing of the cause. This contention is not sound. In *State v. Scott*, 59 Neb. 499, the question was directly presented to the court on an application for a writ of mandamus to compel one of the judges of the District Court to sign a bill of exceptions. The matters which it was sought to have incorporated in the bill of exceptions by mandamus were the rules of practice of the District Court, and a recital of events which transpired in the presence of the court, and which it was claimed had a material bearing on the rulings of which the relator complained. The trial

judge refused to sign such a bill of exceptions. The court held that to intelligently review an order or judgment of the District Court it was necessary that the Supreme Court should be put into possession of all the facts and circumstances known to the District Court, and which it is claimed did influence or should have influenced its decision, and what transpires in the presence of the court and what is judicially known to the court need not formally be given in evidence. The court further held that whatever the District Court may properly take into account in making a decision should, if practicable, be presented to the reviewing court when the record is brought up for review so that the decision may be judged in the light of the circumstances under which it was made. In support of its holding, the court cites 1 Jones on Evidence, sec. 134; *Secrist v. Petty,* 109 Ill. 188; 12 Encyc. Pl. & Pr., 1, and several other cases. In *State v. Fawcett,* 64 Neb. 496, the court announced the same doctrine.

To require that before the rules of a trial court can be embodied in a bill of exceptions such rules should be formally offered in evidence would necessitate the absurd practice of offering in evidence before the court what the court knows judicially, and further that in every case tried in the Municipal Court, where the practice is wholly governed by the rules of that court, the rules should be offered in evidence before they can be embodied in the bill of exceptions. This position, in our opinion, is untenable. The method adopted in this case was held to be proper in *Dyniewicz v. Benziger,* 99 Ill. App. 572.

The certificate above recited, made by the trial judge, shows that the rules were duly adopted in accordance with section 20 of the Muncipal Court Act. (J. &. A. ¶ 3332.)

It is suggested on behalf of appellant, in support of its motion to strike the rules from the bill of exceptions that the pamphlet containing the rules of the Municipal Court was not competent or proper evidence of the ex-

istence of said rules; that the record of the Municipal Court is the only competent evidence of those facts. We think the contention is irrelevant to the point. The question is what were the rules of court, not whether the pamphlet was evidence of the rules. The certificate of the trial judge to the bill of exceptions, containing the rules, is evidence to this court of the rules. Whatever is material to the decision of the cause in the Municipal Court of Chicago, and by the provisions of the Municipal Court Act that court is required to take judicial notice of, should be set out in the bill of exceptions, stenographic report or statement of facts and questions of law involved, in order that a court of review may have such matters before it and be able to intelligently review an order or judgment of that court.

It is further insisted that section 20 of the Municipal Court Act (J. & A. ¶ 3332) does not by its provisions empower the judges of the Municipal Court to make any rule or rules which abandon or change the system and forms of pleading in use in courts of record, or by any rules to adopt another and a different system of pleading for use in cases of the first class in that court.

Section 34 of article IV of the Constitution of 1870 (J. & A. ¶ 190) contains the only provision made in the Constitution originally relating to the Municipal Court of Chicago, and the only laws which such provision authorizes the General Assembly to pass with respect to the Municipal Court are those relating to the jurisdiction and practice of that court. In pursuance of this authority the General Assembly has created a Municipal Court and defined its jurisdiction, and under the authority to prescribe the practice in said court it has provided what the forms of pleading should be in first and fourth class cases. If the term "practice," as used in the Constitution, is not broad enough to include pleadings, then the General Assembly had no power to make any provision in the Municipal Court Act, fixing the forms of pleading for that court, and the provisions of that act, which are intended to simplify pleadings in

fourth class cases, would be in violation of the Constitution.

The title of chapter 110, Hurd's R. S. (J. & A. ¶ 4733), is "An Act in Relation to Practice and Procedure in Courts of Record. Nothing is contained in the title which makes express reference to pleadings; yet in section 46 of that act (J. & A. ¶ 8583) it is provided that the defendant may plead as many matters of fact in several pleas as he may deem necessary for his defense, or may plead the general issue and give notice in writing under the same of special matters intended to be relied on for a defense in the trial, in which notice the special matters so intended to be relied on shall be clearly and explicitly stated, and under which notice, if adjudged by the court to be sufficiently clear and explicit, the defendant shall be permitted to give evidence of the facts therein stated as if the same had been specially pleaded and issue taken thereon. In section 47 of the same act, (J. & A. ¶ 8584) it is provided that the defendant in any action brought upon any contract or agreement, either express or implied, for claims or demands against the plaintiff in such action may plead the same, or give notice thereof under the general issue or under the plea of payment, and the same, or such part thereof as the defendant shall prove on trial, shall be set off and allowed against the plaintiff's demand, and a verdict shall be given for the balance due, etc.

Contained in the same act there are several other sections relating to pleas, the effect of filing the same and the judgments to be rendered on issues made by such pleas. The sections above referred to relate to pleadings and provide what pleas may be filed, and also that a notice in writing may be substituted for a special plea. These sections of the Practice Act, with the exception of slight amendments made in 1907, have been in force for many years and have during all that time been included within the act bearing the same title as the present Practice Act. We infer from this that the General Assembly has heretofore considered the

term "practice" broad enough to include pleadings, and that when the former term was used in the Municipal Court Act (J. & A. ¶¶ 3313—3385) it was intended to be used in the same sense. If the Practice Act provided that the first pleading should be a declaration, it was likewise proper for the Municipal Court, under its power to make rules of practice, to provide that in first class cases the first pleading should be a statement of claim. In our opinion, the term "practice," as used in the Constitution with reference to Municipal Courts, is broad enough to include pleadings, and that the General Assembly used the word "practice" in the broader sense.

In *People v. Central Pac. R. Co.*, 83 Cal. 393, the Supreme Court of California, in holding that the term "practice" included "pleadings," say:

"It is claimed by appellant that this is not in conflict with the third subdivision of said section 25 of article 4, for that it relates to pleading and not to practice. But this is taking too narrow a view of the language of the constitution. It is evident that the words of this inhibitory clause of the constitution are used in their general sense, and in that sense, the words 'practice of courts of justice' include all 'pleadings,' although the word 'pleadings' never includes all 'practice.' It is impossible to contemplate the subject of 'practice of the courts of justice' and eliminate from the mind all thought of 'pleading.' Burrill defines 'practice', first, as 'the course of procedure in courts,' and says that 'in a general sense practice includes pleading.' Rapalje's & Lawrence's Law Dictionary gives the following definition of the word 'practice:' 'The law of practice or procedure is that which regulates the formal steps in an action or other judicial proceeding. It therefore deals with writs, summonses, pleadings, affidavits, notices, motions, petitions, orders, trials, judgments, appeals, costs and executions.'"

We hold that the Municipal Court is given the power to make rules which abandon or change the system and forms of pleading in use in courts of record.

It is contended on behalf of appellant that the lower

court erred in overruling the motion of appellant to dismiss each of the causes of action, now consolidated, because appellee failed and neglected to file a declaration as required by law. In support of this position, section 28 of the Municipal Court Act (J. & A. ¶ 3340) is cited, which required the plaintiff to file pleadings within three days after commencement of suit. This, it is urged, she did not do, but on the contrary, at the time of commencing suit and filing the *praecipe,* she filed a paper called "statement of claim," which, it is contended, is demurrable both generally and specially as a declaration.

Waiving the question whether the so-called interlocutory bill of exceptions, signed and filed in the Municipal Court on April 6, 1911, before the entry of final judgment, may be treated as a part of the record in this case, a question we do not find it necessary to decide, and assuming the motion was made and denied, an examination of the documents filed in the suits at the time they were started discloses that every allegation necessary to a common law declaration is presented, and they were, in our opinion, sufficient on general demurrer if the suits were pending in the Circuit Court. As above stated, the policies sued on are set forth in the statements of claim, which also contain averments showing that the defendant assumed, guarantied and reinsured the risks; the death of the assured; service of proof of death on the defendant; performance by the assured during his lifetime and by the plaintiff, the beneficiary, thereafter, of all the terms and conditions of the policies; and the failure and refusal of the defendant to pay the money due. The facts averred in the amended statements of claim constitute a complete cause of action, and the averments are in such form that the statements of claim filed may be treated as common law declarations.

It is urged that the findings and judgment of the lower court were erroneous because the amended statements of claim of appellee did not state facts sufficient

to constitute a cause of action against appellant because the statements of claim failed to aver that Weil, the assured, accepted the reinsurance contract.

That contract provided that in consideration of the covenants and agreements contained therein, appellant accepted the transfer to it of the policies and securities, and thereby reinsured, as of the time when the contract went into effect, all the then living policy holders of the Inter-State whose policies were then in force, and assumed and guarantied said policies of the living policy holders in accordance with the terms and conditions of their policies respectively. Neither the statute nor the contract of reinsurance required any expense acceptance on the part of Weil, and if any was contemplated it is such an acceptance as would be implied from the failure on his part to elect to be transferred to some other insurance company than the appellant within ten days after the meeting of the policy holders held pursuant to a thirty days' notice previously given to that effect according to the statute governing reinsurance contracts. Each of the statements of claim filed in this cause shows that the reinsurance contract was submitted to and approved by a two-thirds vote of a meeting of the policy holders of the Inter-State, held on December 31, 1909, and that such meeting was duly and regularly called and held in accordance with the statutes of Indiana, and that a printed notice of said meeting, called to consider the reinsurance contract, was mailed to each policy holder of the Inter-State at least thirty days before the date of said meeting. The failure of the assured to exercise his right to be transferred to some other insurance company was tantamount to his acceptance of the reinsurance contract, if any such acceptance was necessary. The finding and judgment of the lower court is sufficiently supported by the allegations of the amended statements of claim. *Shoaf v. Palatine Ins. Co.,* 127 N. C. 308; *Federal Life Ins. Co. v. Risinger,* 46 Ind. App. 146; *Federal Life Ins. Co. v. Kerr,* 173 Ind. 613; *Johannes v. Phenix Ins.*

*Co.,* 66 Wis. 50; *Brown v. Mutual Reserve Fund Life Ass'n,* 224 Ill. 576.

Error is assigned on the striking from the files appellant's affidavit of merits because it stated a good defense to the policies sued on.

Each of the policies contained the following clause:

"This policy shall be incontestable after one year from its date of issue for the amount due, provided the premiums are duly paid as provided herein; except that military or naval service in time of war, without a permit from the company, is a risk not assumed under the contract at any time, but the reserve on this policy will be due and payable in case of death while in such service."

This clause of the policies under the averments of the statements of claim, which were not denied by the affidavit of merits, precluded appellant from asserting the defense of fraud and misrepresentations set up in the affidavit. *Flanigan v. Federal Life Ins. Co.,* 231 Ill. 399; *Wright v. Mutual Benefit Life Ass'n,* 118 N. Y. 237. In *Massachusetts Benefit Life Ass'n v. Robinson,* 104 Ga. 256, after exhaustively discussing the subject, the Court said:

"As the law may prescribe such a limitation in which actions shall be brought by the party to be affected, it is also within the power of the contracting parties to agree among themselves upon a period of time which would amount to a statute of limitations, either greater or less than the period fixed by the law."

And to the same effect are *Clement v. New York Life Ins. Co.,* 101 Tenn. 22; *Royal Circle v. Achterrath,* 204 Ill. 549, and numerous authorities.

There is nothing in the affidavit of merits which denies the execution or the making of the reinsurance contract set out *in haec verba* in the plaintiff's statements of claim. The contract set out in the statement of claim contains no provision to the effect that it reinsures only such policy holders who should expressly assent to or accept such reinsurance by appellant. Under the law, the reinsurance must be of all the policies

and risks and not merely of such policies the holders of which should assent and accept the reinsurance. *Bolles v. Mutual Reserve Fund Life Ass'n,* 220 Ill. 400.

Furthermore, the fair inference from the facts set out in the affidavit of merits is that Weil assented to and accepted the contract of reinsurance. It sets out that he knew of the execution and approval of the contract of reinsurance for a period of more than eight months prior to his death, and that during all that time he did not in any way whatsoever communicate with appellant in reference to said policies or either of them, or the insurance.

The general statements in the affidavit that neither of the policies were guarantied or reinsured by appellant, and that they were of no binding force and that there was nothing due appellee from appellant on either of the policies, are mere conclusions. *Kadison v. Fortune Bros. Brewing Co.,* 163 Ill. App. 276.

The affidavit of merits did not set up a good defense to the policies, and therefore, it was properly stricken.

It is urged on behalf of appellant that the damages should have been assessed by a jury and not by the court, appellant having demanded a jury trial in apt time.

Appellee's statements of claim averred all the facts necessary to maintain appellee's cause of action, and when the appellant elected to stand by its affidavit of merits after it had been stricken from the files by order of court, the allegations of appellee's statements of claim were admitted by the default so that all the facts, of which appellant claims there was no evidence nor proof, were admitted by appellant and no evidence was required to prove them. In *Massachusetts Mut. Life Ins. Co. v. Kellogg,* 82 Ill. 614, an action was brought in *assumpsit* upon a life insurance policy and the defendant defaulted. The Court, in holding that there was no necessity of any proof in the case, even for the assessment of damages, says: "Again, in this case, there was no necessity for any proof whatever for the assess-

ment of damages. The damages rested purely in computation. The default admitted every allegation of the declaration, in so far as it was traversable. It admitted the execution of the policy, the terms of the policy, the full performance of the conditions by Kellogg, the fact of the death under the age of 45, the time of the death, notice and proof of these facts 90 days before, and hence admitted that $1,000 was due and unpaid at the time of the bringing of the suit, and all that remained was to compute interest from the bringing of the suit to the assessment of damages. This needed no proof whatever, and so long as the damages do not exceed the amount of the policy and proper interest, the defendant cannot be said to be harmed."

And in *Binz v. Tyler,* 79 Ill. 248, an action was brought in *assumpsit,* to which a demurrer was filed and overruled, and the defendant elected to abide by the demurrer; the Court says: "The demurrer admitted every material allegation in the declaration, and nothing was left to be inquired into but the amount of damages sustained by the plaintiff." Other Illinois authorities might be cited to the same effect.

This question was before us in *Second Nat. Bank of Saginaw v. Claney,* 178 Ill. App. 427, and the judgment was affirmed in the Supreme Court by a denial of the application for a writ of certiorari. As said in the above case, there was no dispute as to the amount of the damages to be assessed, and if the jury had been called, the court would have instructed them to find a verdict for the exact amount of the judgment. It would be an idle form to impanel a jury and instruct them to find the amount of damages, which rested purely in computation, and as to which no evidence was required. It was not reversible error for the court to assess the damages.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*