SHOAF v. PALATINE INSURANCE COMPANY.

(December 11, 1900.)

*Insurance—Policy-holder's Right to Sue Re-insurer.*

A policy-holder may sue a re-insurer to recover a loss on prop-
erty covered by his policy.

CIVIL ACTION by C. J. Shoaf and W. J. Ellis, trading as
C. J. Shoaf & Co., against the Palatine Insurance Company,
heard by Judge *W. S. O'B. Robinson* and a jury, at May
Term, 1900, of FORSYTH Superior Court. From judgment
for plaintiffs, the defendant appealed.

*Watson, Buxton & Watson,* for the plaintiffs.
*Glenn & Manly,* and *Burwell, Walker & Cansler,* for the
defendant.

FAIRCLOTH, C. J.   Prior to October, 1898, the Merchants
and Manufacturers Fire Insurance Company, of Baltimore
City, in the State of Maryland, issued its policies of insur-
ance on the property of the plaintiffs in the town of Salem,
N. C., with the usual stipulations and conditions, and re-
ceived the premiums therefor from the plaintiffs.   During
the life of said policies, to-wit, on October 4, 1898, the said
Merchants Company and the Palatine Fire Insurance Com-
pany, of Manchester, England, doing business in this State,
entered into a written contract of re-insurance, in which the
Palatine Company agreed to re-insure all outstanding risks
of the Merchants Company for loss or damage by fire, etc.,
on any property located in the United States and Canada,
and assumed all liability under any outstanding policies or
risks theretofore written by said Merchants Company, and
on any policy or risk that might be written by the Merchants
Company before November 1, 1898, the later business to be

for the benefit of, and under the direction of, the Palatine Company, which company assumed all expenses and taxes connected therewith, and all said risks and policies are re-insured by the Palatine Company. In consideration of such re-insurance, the Merchants Company agreed to pay one-half of the unearned gross *pro rata* premiums on all policies in force on October 1, 1898, to furnish complete schedules of all policies, to retire from business, and to transfer and de-liver its good-will, right, title, and interest in its business, daily reports, indorsements, registers, and books of record to the Palatine Company, except office fixtures, furniture, etc., with a provision of release on failure to perform the obliga-tions of said contract. The tenth article of said re-insur-ing contract provides that it shall only be effective as between the parties thereto; that no holder of a policy in the Mer-chants Company shall be entitled to enforce this contract against the Palatine Company; that the holders of such policies shall prosecute against the Merchants Company any claim arising under said policies; and the Palatine Com-pany "agrees to pay all such claims legally arising and duly proved; and further, in case of any contest arising in con-nection with, or suit being brought for, or on, any such claim, said Palatine Company agrees to defend the same, and pay all costs and expenses incident thereto." This agreement was signed by the two companies, and the plaintiffs were not parties thereto. Subsequently the insured property was de-stroyed by fire, and the plaintiffs, having performed the con-ditions of their policy, instituted this action against the Pala-tine Company alone.

The question is, can the plaintiffs, upon these facts, main-tain their action? This question has not until now been be-fore this Court. There is some diversity of opinion in the decisions of the Courts in our sister States and the general

SHOAF v. INSURANCE CO.

authorities. · There is no question raised as to the validity
of the insuring and re-insuring contracts, each being in due
form, and supported by a valuable consideration.    A policy
of fire insurance is a contract of indemnity (*Darrell v. Tib-
bitts,* 5 Q. B. Div., 560) ; and such contract gives the insurer
an insurable interest in the property insured, co-extensive
with its liability (*New York Bowery Fire Insurance Com-
pany v. New York Fire Insurance Company,* 17 Wend. 359).
A contract of re-insurance seems to be a union and blending
of the business of the two companies, presumably for the
advantage of each party.    The re-insurer absorbed the estate
and rights of the re-insured, and assumed the risks and lia-
bilities of the re-insured, with the privilege of the re-insured,
in the present case, to continue issuing new policies for a
time  specified,  with  the  same  right  and  liabilities
under  the  new  policies  as  under  those  already  out-
standing; this to be done for the benefit of, and under the
direction of, the defendant.    The plaintiffs were neither a
party to, nor in privity with, said contracts.    The question
is, have they an interest in, or arising out of, the contract ?
The defendant is bound to indemnify the re-insured for all
risks and loss, and the re-insured, at the same time, is bound
to indemnify the plaintiffs for risk and loss.    Does the
defendant's liability inure to the benefit of the plaintiffs,
and, if so, can the plaintiffs directly enforce their claim for
loss against the defendant ?    The unearned premium at the
date of the contract was a part of the consideration passing
to the defendant for its risk and liability assumed.    In this
unearned premium the plaintiffs had an interest at the time
of the re-insurance.

The principle sanctioned by several respectable authorities
is this:    If A, on receipt of a good and sufficient considera-
tion, agrees with B to assume and pay a debt of the latter
to C, then C may maintain an action directly on such con-

tract against A, although C is not privy to the consideration received by A. The case before us seems to come within the same principle. Our Code (section 177) provides that every action must be prosecuted in the name of the real party in interest, etc. In all the cases close attention is given to the language of the agreement. In the present case the defendant expressly assumes the liability in case of loss, but agrees to pay to the Merchants Company only after claims have been duly proved in an action against the Merchants Company. The defendant also agrees, in the event of such litigation, "to defend the same, and pay all costs and expenses incident thereto." We see no reason why the plaintiffs should be required to first sue the Merchants Company, and then, in case of that company's insolvency, have to sue the defendant on its contract. The defendant has all the means and information necessary to make a just defense.

We can see no reason why the plaintiffs may not do directly that which it must be admitted they can do indirectly, nor do we see how the defendant is prejudiced thereby. The defendant suggests no such danger, but relies solely on the ground that it has no contract with the plaintiffs. *Johannes v. Insurance Company,* 66 Wis., 50, is decisive on this question. It does not appear clearly, either from the statement, or the opinion, whether the promise was to pay the loss to the insured, or the re-insured, but the reasoning in the opinion does not consider that matter material. It is the implied right, arising out of the express agreement of the defendant, that enables the plaintiffs to maintain the action. The defendant relies on the provision in Art. X., of its contract as a protection against any action of the plaintiffs against that company. If the plaintiffs have a right to sue the defendant, as we think they have, the two companies can not, by any agreement between themselves, to which plaintiffs are not a party, defeat that right.

There are numerous objections to evidence, exceptions, and prayers for instruction.    Some relate to communications between plaintiffs' attorneys, and Harris, the general agent, and Ballard, an assistant manager, of the defendant and the Merchants Company.    These letters were written pending, and in connection with, the work of adjusting the loss caused by the fire, and have no material bearing on the present question.    Carefully reading the evidence, we find no incompetent evidence admitted on any material matter.    The issues found in favor of the plaintiffs dispose of most of the questions raised by the exceptions.

Another exception is the refusal of his Honor to charge, on the third issue, "that there is no evidence of re-insurance by the defendant upon which it can be liable directly to the plaintiffs in this suit, and the jury will answer the third issue, 'No.'"    Another exception is, that his Honor refused to dismiss the action, on motion, under Acts 1897, c. 109. These exceptions are met by what we have stated above.    The defendant says, in its brief and oral argument, that "the first and leading question in the case relates to the right of the plaintiffs to sue the defendant upon the policies, and to the liability of the latter, even if a good cause of action upon the policies has accrued to the plaintiffs."    That is the crucial point in the case, and that we have considered.    Our conclusion on that point, already stated, renders further investigation unnecessary.

Affirmed.