CLARK, C. J., dissenting. *Page 498 
The defendant was convicted of assault with intent to commit rape and sentenced to imprisonment in the State's Prison for five years. The testimony of the prosecutrix was: "I know the defendant; he came into the cotton patch when I was at work last summer. I was hoeing cotton in the field alone; can't say what time of day it was; it was in the morning. Defendant asked me where my pa was and where Asa White was. He then asked me where my two brothers were. I told him (685) they were gone to the field where pa and Asa White were The field was a half mile away, in `new ground' field. He asked me when they would come back, I said in `a few minutes.' He then said `give me the hoe and let me hoe out that row of cotton.' I did so and went and got another hoe. He hoed out to the end of the row and threw the hoe in the corner of the fence. He then grabbed me by my left arm and started to put his right to my neck under the chin. He did not quite touch my neck with his right hand. I drew back my hoe with my right hand and told him if he did not go away and let me alone I would kill him with the hoe. He then turned me loose and walked off ten or fifteen steps and said `you are going to kill me,' and I said `yes, I am if you don't go off and let me alone.' He went off then to his work in Mr. White's field. I then started to the field where pa was and met my two brothers and told them what had happened. When I told him to turn me loose, he did it; did not threaten me, but scared me."
Asa White testified that the defendant was working for his mother and he heard defendant say afterwards, in speaking of the difficulty, that he had been over there. Witness asked him what he went for and he said to "get some." This is all he said.
It was in evidence that defendant was not seen in the neighborhood again until he was at the preliminary trial. The sheriff found him in Robeson jail. This was the entire evidence. The defendant asked his Honor to instruct the jury that he could only be convicted for a simple assault. This was declined and defendant excepted. From a judgment on the verdict the defendant appealed.
The only question presented by the exception is whether there was any evidence on the question of intent proper to be submitted *Page 499 
to the jury. Mr. Justice ASHE, in S. v. Massey, 86 n.c., 658, says: "In order to convict defendant on the charge of an assault with intent to commit a rape, the evidence should show not only an assault but that defendant intended to gratify his passions on the person of the woman, and that he intended to do so at all events notwithstanding any resistance on her part." This language has been since the decision of that case the guide followed by the court in this State. In that case the question bearing on the evidence of intent was much stronger than here. The woman saw the man following, threatening if she did not stop to kill her. The Court held the evidence insufficient. In S. v. Jeffreys, 117 N.C. 743, Massey's case is approved and may now be regarded as the settled law of the State. The case is easily distinguished from S. v. Mitchell, 89 N.C. 521, and S. v. Page,127 N.C. 312. In both these cases there was evidence of actual violence. We can have no hesitation in adopting the language of a Judge of such elevated character, learning and jealous regard for the sanctity of virtue as Judge ASHE, when he says: "When the act of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal."
We do not deem it necessary to discuss the facts in this case, nor have we the right to assume the existence of any facts pertinent to the decision of the case other than those certified to us by the Court below. The record states the transaction in the language of the witness. It has ever been the province and duty of the Court to decide and declare the law, and of the jury to decide and declare facts. Whether there is any evidence tending to prove a fact in issue has always been regarded as a question of law for the decision of the Court. But whether an inference is to be drawn from the evidence (687) is exclusively in the province of the jury. We would be recreant to our duty as judges were we to fail to declare the law with respect to the question whether there is any evidence for fear of offending the jury. This question the jury do not decide. We have no right to infer, either for the State or the defendant, the existence of any facts which were heard by his Honor or considered by the jury other than those certified to us. To do so would be to depart from our sphere of action and decide a question of law upon an assumption that a state of facts existed of which we have neither knowledge nor information. It is a mistake to say that this Court passes upon the weight of the testimony, the conclusions to be drawn therefrom, or in any respect review the action of the jury. The question *Page 500 
which lies at the threshold of every case is whether there is any evidence to be submitted to the jury. We can see no reason why, in differing with the Judge upon this question we are reflecting upon his intelligence or learning, more than in differing with him in respect to any other question of law. To introduce considerations of this character into the decisions of this Court is, to say the least, a novelty and we think well calculated to embarrass the Court, an raise issued not proper for our consideration. Our own reports contain numerous cases in which almost every Judge who has sat upon this bench has concurred in reversing the opinion of the court below upon the question as to whether there is any evidence, and in doing so in this case we are not conscious of any innovation or announcing any new doctrine. If this man is guilty according to law and should be so punished. To say that his Honor found beyond a reasonable doubt that the defendant is guilty is to assume that it is the duty of a Judge to set aside every verdict in which he is not so satisfied. This we do not decide to be the duty of the Court. When, in the discharge of this duty, he shall set aside a verdict is a matter addressed to his sound (688) judgment and is not reviewable. There is nothing in the record to show the character of the defendant except the fact that he committed an assault upon the prosecutrix. To say that every man who commits an assault upon a woman must be presumed of such character as would justify a verdict that violence to the language of this Court as found in S. v. Massey, supra. It is said that the jury are the proper triers of the facts, and the facts were within their province, and that we have no right to reverse their judgment on the facts. The fallacy in this position consists in a failure to distinguish between the functions of the Court and the jury. We decide the question of law, not the conclusions of fact. We must discharge our duty with the light that is given us to see it. To fail to do so because of any fear that we should offend twelve sensible and intelligent men would render us unfit to discharge the duties of the high office to which we have been appointed. Upon the testimony before us the defendant is guilty of an aggravated assault. There must be a
New Trial.