## SOUTHWESTERN SURETY INS. CO. v. STEIN DOUBLE CUSHION TIRE CO. et al. (No. 7448.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 11, 1915. Rehearing Denied Dec. 24, 1915.)

1. APPEAL AND ERROR ☞1097—SCOPE OF REVIEW—PRIOR APPEAL—EFFECT.

Although on a prior appeal a question was decided on review of the court's action in sustaining demurrers to the petition, the decision will not be disturbed on appeal from a judgment on trial of the issues, where the evidence did not differ materially from the allegations of the petition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4427; Dec. Dig. ☞1097.]

2. INSURANCE ☞686—REINSURANCE—OPERATION OF CONTRACT.

A reinsurer under a strict reinsurance contract is not liable directly to the insured, who cannot maintain his action against the reinsurer, ignoring the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1823; Dec. Dig. ☞686.]

3. INSURANCE ☞684—"REINSURANCE"—EXTENT OF LIABILITY.

A contract of reinsurance is one by which an insurer agrees to protect the first insurer from the risk he has already assumed, or a part of it, and which creates no privity between the reinsurer and the insured, although it is competent for the reinsurer by the contract to assume direct liability to the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1817; Dec. Dig. ☞684.]

4. INSURANCE ☞679 — REINSURANCE — CONTRACT—CONSTRUCTION—PAROL EVIDENCE.

A contract of one insurance company to indemnify another against loss upon certain bonds executed by it upon stipulated conditions as to calculation of premiums to be paid it by the first insurer, expressly providing that "said company undertakes to reinsure from" a certain date, is by its express terms a contract of reinsurance, creating no privity between the reinsurer and the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1811, 1812, 1818, 1819; Dec. Dig. ☞679.]

5. EVIDENCE ☞448—PAROL EVIDENCE—REINSURANCE CONTRACT.

A contract of reinsurance being unambiguous, parol evidence to show an intention to contract for the benefit of insured, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. ☞448.]

---

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Stein Double Cushion Tire Company, as assignor, for the use and benefit of the Mohawk Rubber Company, and the said Mohawk Rubber Company in its own behalf, against the William T. Fulton Company and the Southwestern Surety Insurance Company. From a judgment against defendants and in favor of the defendant Insurance Company against its codefendant, and orders overruling a motion for new trial, the defendant Insurance Company appeals. Reversed and judgment for appellant rendered.

See, also, 159 S. W. 1013.

John T. Suggs, of Denison, and G. D. Hunt, of Dallas, for appellant. Davis, Johnson & Golden, of Dallas, for appellees.

TALBOT, J. The appellee Stein Double Cushion Tire Company, hereinafter referred to as the Stein Company, as assignor, for the use and benefit of the Mohawk Rubber Company, assignee, and the said Mohawk Rubber Company in its own behalf, brought this suit against the Wm. T. Fulton Company, hereinafter referred to as the Fulton Company, and the appellant, Southwestern Surety Insurance Company, hereinafter called Surety Company. The plaintiffs alleged, in substance, that the defendant Fulton Company purchased certain goods from the plaintiff Stein Company, in accordance with a consignment or commission contract entered into between the said Fulton Company and the Stein Company, but that there was a default in the payment of the purchase price of same. It was further alleged that, to insure the faithful performance of said consignment contract, a surety bond in favor of the Stein Company was executed by the Fulton Company, as principal, and the Texas Surety & Insurance Company, as surety, and that thereafterwards the surety bond was reinsured by the defendant Surety Company, and that thereby the Surety Company became liable to the Stein Company for the purchase price of said goods. The Texas Surety & Insurance Company was not made a party to the suit. The defendant Fulton Company in its answer, in addition to a general denial, pleaded that the alleged consignment contract sued on by plaintiffs was in violation of the antitrust laws of the state of Texas, and void, and by plea in reconvention asked for damages against the Stein Company for an alleged failure on its part to supply the Fulton Company with such goods as the latter needed in the business, and the consequent injury thereto. The defendant Surety Company in its answer, in addition to a general denial, specially denied that it had become bound or liable to plaintiffs on account of the said reinsurance contract, or that there was any privity between it and plaintiffs. It admitted the execution of a reinsurance contract in favor of the Texas Surety & Insurance Company, but denied that under the terms of said contract it was liable to any one other than the said Texas Surety & Insurance Company. It further pleaded, in like manner as its codefendant, Fulton Company, that the alleged consignment contract was void, as being in violation of the anti-trust laws of the state of Texas, and, further, that all contracts collateral thereto were also void. It further pleaded that the plaintiff Stein Company was a foreign corporation, doing business in Texas without a permit, and that the plaintiff Mohawk Company derived its rights, according to plaintiffs' pleadings, from the said Stein Company, and for that reason the plaintiffs should not be permitted to maintain their suit. By a special plea over the Surety Company asked, in the event plaintiffs should recover in any amount against it, that it have judgment against its codefendant, Fulton Company, for a like amount, with its costs and attorney's fees. A trial was had, and the case submitted to a jury upon special issues. Upon the jury's findings a judgment was rendered in favor of the plaintiff Mohawk Rubber Company against both defendants, for the sum of $2,202.64, with a judgment over in favor of the defendant Surety Company against its codefendant, Fulton Company, together with an attorney's fee of $470, upon payment of the judgment against it, and in favor of both defendants as against the plaintiff Stein Company. Motions for new trial were filed by both defendants. These motions were overruled by the trial court, and the appellant, Surety Company, alone perfected an appeal.

The case is before this court for the second time. Stein Double Cushion Tire Co. v. Wm. T. Fulton Co. et al., 159 S. W. 1013. The suit was originally instituted by the Stein Company, a private corporation of the state of Ohio, with its principal office and place of business in the city of Akron in said state, to recover the sum of $2,202.64, alleged to be due on account for goods sold or delivered to the defendant Fulton Company under the written contract above referred to, and entered into between said parties on the 1st day of August, A. D. 1910. This contract is set out in the opinion of the court published in 159 Southwestern Reporter, page 1013, and need not, we think, be repeated in this opinion. The defendant Fulton Company, in consideration that the Stein Company should sell to it the goods agreed to be sold or delivered under the terms of the said written contract, executed and delivered to said company, in accordance with the terms of said contract, a bond in the sum of $5,000 with the Texas Surety & Insurance Company, a corporation of the state of Texas, as surety, conditioned that the

said Fulton Company should do and perform all things required of it by said contract, and should, in all things faithfully and honestly comply with and fulfill all the terms and conditions of said contract. This bond was executed for a period of 12 months, from the 15th day of December, A. D. 1910, to the 15th day of December, 1911, and provided that on the latter date all liability under it should cease and terminate. On March 7, 1911, the appellant, Surety Company, and the said Texas Surety & Insurance Company, entered into a reinsurance contract, whereby the appellant, Surety Company, reinsured the Texas Surety & Insurance Company against any loss or losses "in those certain lines of surety bonds known in the office of the said the Texas Surety & Insurance Company, as consignee bonds, freight bonds, liquor bonds, malt .license bonds, fidelity bonds, and miscellaneous bonds aggregating $2,278,306.44. Among the bonds so reinsured is the bond executed by the Fulton Company, with the said the Texas Surety & Insurance Company as surety, to secure the faithful performance by the said Fulton Company of the said contract entered into between it and the Stein Company, August 1, 1910. The reinsurance was upon the following terms and conditions, namely:

"The unexpired term of each of said bonds shall be calculated as a fractional part of the year and at the rate of so much per annum in each case respectively as set opposite the number and name of each in the extreme right-hand column, said extreme right-hand column being headed 'Premium,' as will appear in said attached exhibit, and the consideration to be paid by said Southwestern Surety Insurance Company shall be the amount of any unearned premium calculated upon the terms so set out, less a commission to the said the Texas Surety & Insurance Company of thirty-five (35%) per cent. of said amount. Said Southwestern Surety Insurance Company hereby undertakes to reinsure from said date of February 25th, 1911, and a statement of the amount due in each case shall be calculated by said Southwestern Surety Insurance Company as above provided and charged to said the Texas Surety and Insurance Company, and shall be by the said the Texas Surety and Insurance Company remitted from its office in San Antonio, Texas, not later than March 20, 1911. If required by the Texas Surety & Insurance Company the said Southwestern Surety Insurance Company shall furnish its original bond in any case or cases for substitution in place of said bond of the Texas Surety & Insurance Company now outstanding and hereby reinsured, and if required by the Texas Surety & Insurance Company the said Southwestern Surety Insurance Company shall reimburse the Texas Surety & Insurance Company the amount of the unearned premium on any of the above bonds, less the thirty-five (35%) per cent. commission allowed the Texas Surety & Insurance Company and figured on the unearned premium returned."

The contract entered into between the Stein Company and the Fulton Company, under which the items of merchandise constituting the account sued on were sold and delivered, was attached to and made a .part of the plaintiff's original petition, and upon the first trial in the district court a general demurrer and special exceptions urged by the defendants were sustained on the ground that said contract was in violation of the anti-trust laws of this state. This ruling of the district court was by this court reversed, and the cause remanded. Stein Double Cushion Tire Co. v. Wm. T. Fulton Co. et al., supra. Before the trial was had which resulted in the judgment from which the present appeal is prosecuted the Stein Company sold, transferred, and assigned all of its claims, rights, and demands, including the claim involved in this controversy, to the said Mohawk Rubber Company, a private corporation of the state of Ohio, and by an amended petition sought to prosecute the suit for the use and benefit of the said Mohawk Rubber Company, and in addition thereto said company, by said amended petition, was made a party plaintiff to the suit.

[1] Assignments of error, to the effect that the trial court erred in overruling defendant's special exception to the plaintiff's petition because it appeared from the allegations of said petition that the plaintiff Stein Company, through whom the plaintiff Mohawk Rubber Company claims, was a foreign corporation and had not secured a permit to do business in this state, and erred in entering judgment against appellant, because the contract between the Stein Company and the Fulton Company was in contravention of the anti-trust laws of this state, will be overruled. For the reasons set forth in our opinion on the former appeal of this case we held the contract in question should be construed to be one of consignment and not one of sale; that the delivery of the goods, for the value of which this suit is brought, under said contract, constituted an interstate commerce transaction, and hence our anti-trust laws and laws requiring a foreign corporation to obtain a permit to do business in this state had no application. The question, it is true, arose on the former appeal upon the trial court's action in sustaining demurrers to the plaintiff's petition, but we do not believe the facts in evidence on the trial, resulting in the judgment now appealed from, are materially different from those alleged in that petition.

[2] The main question now presented is whether the appellees can maintain this action by virtue of the reinsurance contract entered into between the Texas Surety & Insurance Company and the appellant, Southwestern Surety Insurance Company. The decision of this question involves and depends upon a determination of the further question whether the reinsurance contract is strictly one of reinsurance, or one in which the appellant assumed the liabilities of the Texas Surety & Insurance Company. If the reinsurance agreement was strictly a reinsurance contract, then the appellees have no cause of action against the appellant by reason there-

of, but if said agreement was more than a mere contract of reinsurance and the appellant thereby assumed the liabilities of the reinsured, the Texas Surety & Insurance Company, then the right of appellees to institute and maintain this suit cannot, under the weight of authority, be questioned.

[3] We find that the term "reinsurance" has a well-defined meaning. It is a contract of indemnity to the reinsured, and is—

"insurance by the first insurer of the whole or some part of the interest in the risk created by his contract of insurance."

It is otherwise defined as:

"The contract that one insurer makes with another to protect the first from the risk he has already assumed." Ruohs v. Traders' Fire Ins. Co., 111 Tenn. 405, 78 S. W. 85, 102 Am. St. Rep. 790.

In Appeal of Goodrich, 109 Pa. 529, 2 Atl. 211, it is said:

"Reinsurance is properly applied to an insurance effected by one underwriter with another, the latter wholly or partially indemnifying the former against the risks which he has assumed; that is to say, after an insurance has been effected, the insurer may have the subject of insurance reinsured to him by some other. There is, in such case, however, no privity between the original insured and the reinsurer, the latter is in no respect liable to the former, as a surety or otherwise; the contract of insurance and of reinsurance being totally distinct and disconnected. * * * Even if the insurer fail, or become insolvent, so that his insured receives only a dividend, however small, the reinsurer can gain nothing by this, but must pay the amount of the loss to the first insurer."

This language is quoted with approval in David Bradley & Co. v. Brown, 78 Neb. 836, 112 N. W. 331, and accompanied with the following remarks:

"Where an insurance company has written a policy and afterwards causes itself to be reinsured, and after the loss of the property insured such company becomes insolvent, the person originally insured has no equitable lien upon the sum of money due on the part of the reinsurer, but the fund belongs to all the creditors of the insolvent company ratably. * * * There is no privity between the insured and the reinsurer, and any sum recoverable by the insurer from the reinsurer is an asset of his estate, liable to the claims of his general creditors, and not subject to any specific lien or charge in favor of the insured."

So the general rule that the liability of the reinsurer is solely to the reinsured, and the party originally insured has no right of action against the reinsurer upon the contract of reinsurance is well established. But while such is the general rule, it is clearly—

"competent for the reinsurer to make the reinsurance contract inure directly to the benefit of the party originally insured, and, in jurisdictions where a third person is allowed to maintain an action on a contract made for his benefit, he may, in such a case, recover directly from the reinsurer."

This is well illustrated by the cases of Shoaf v. Palatine Ins. Co., 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 804; Johannes v. Phenix Ins. Co., 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249, cited by appellees, and others. In Shoaf's Case the reinsuring company agreed to assume all liabilities under any outstanding policies of the reinsured then existing, and on any policy that might be written thereafter by the reinsured, for the benefit of and under the direction of the reinsuring company, and the reinsuring company assumed all expenses and taxes connected therewith, and all of said risks and policies were reinsured by the Palatine Insurance Company, the reinsurer. The Supreme Court of North Carolina held that this contract inured to the benefit of policy holders, and that they could maintain suits upon it against the reinsurer. In Johannes v. Phenix Ins. Co., the contention was that the contract between the two companies was confined strictly to them, and that the plaintiff, under his policy, had no privity in the contract, and could not maintain an action thereon against the reinsuring company; in other words, that the contract was strictly one of reinsurance, and not made for the benefit of policy holders. But the court held that the contract was something more than a reinsurance and, after stating the terms of the contract, said:

"It seems to us that by the terms of the contract, as alleged, the Phenix, in effect, thereby assumed the risks covered by each policy, and agreed to pay any loss arising under each policy."

And for this reason the court held the policy holder could maintain the suit.

[4] The case of Spann v. Cochran, 63 Tex. 240, is not in point, and the cases just discussed are the principal ones relied upon by the appellees to show their right to maintain this action against the appellant, but we are of the opinion the facts of those cases are so materially different from the facts in the present case they cannot be regarded as authority for such right. The contract of reinsurance here involved is unambiguous, and appellant, by its terms, did not agree to assume the bond obligation of the Texas Surety & Insurance Company to the appellee Stein Company. The contract by its terms is clearly one of ordinary reinsurance for the sole benefit of the Texas Surety & Insurance Company, and, being unambiguous, parol evidence to show that the intention was to contract for the benefit of the appellees was inadmissible. Am. & Eng. Enc. of Law, p. 254. There appears, however, to have been some evidence introduced with a view of showing such intention, but it was not of sufficient probative force, even if admissible, to warrant a finding that such was the intention of the parties. The reinsurance contract, as shown in our statement, reinsured the Texas Surety & Insurance Company against any loss or losses, in certain lines of surety bonds named in said contract, among them being the bond executed by the Fulton Company with the Texas Surety & Insurance Company as surety to secure the faithful performance, on the part of the Fulton Company, of the contract entered into between

it and the Stein Company August 1, 1910. The reinsurance was upon the following terms and conditions, to wit:

"The unexpired term of each of said bonds shall be calculated as a fractional part of the year and at the rate of so·much per annum in each case respectively as set opposite the number and name of each in the extreme right-hand column, said extreme right-hand column being headed 'Premium,' as will appear in said attached exhibit, and the consideration to be paid by said Southwestern Surety Insurance Company shall be the amount of any unearned premium calculated upon the terms so set out, less a commission to the said the Texas Surety Insurance Company of thirty-five (35%) per cent. of said amount. Said Southwestern Surety Insurance Company hereby undertakes to reinsure from said date of February 25, 1911, and a statement of the amount due in each case shall be calculated by said Southwestern Surety Insurance Company as above provided and charged to said the Texas Surety & Insurance Company, and shall be by the said the Texas Surety & Insurance Company, remitted from its office in San Antonio, Texas, not later than March 20, 1911."

This contract, by its express terms, is one of reinsurance strictly, whereby the appellant merely agreed to reinsure the Texas Surety & Insurance Company, against any loss occurring after the date therein named upon bonds then in existence upon which the Texas Surety & Insurance Company was bound as surety, and is subject, it occurs to us, to no other interpretation. The appellant neither expressly nor impliedly assumed, in the event of loss, the payment of the bonds mentioned in the contract to the obligee therein. It is true the contract stipulates that if required by the Texas Surety & Insurance Company the appellant, Surety Company, would "furnish its original bond in any case or cases for substitution in place of said bond of the Texas Surety & Insurance Company now outstanding and hereby reinsured," etc., but it does not appear that appellant was ever called upon to, or did, perform this part of the contract. The case is, in important respects similar to the case of Vial v. Norwich Union Fire Ins. Society, 257 Ill. 355, 100 N. E. 929, 44 L. R. A. (N. S.) 317, Ann. Cas. 1914A, 1141, in which the cases of Shoaf v. Palatine Ins. Co. and Johannes v. Phenix Ins. Co., supra, and other cases, are reviewed and distinguished, and in which the contract therein involved was held to be strictly of reinsurance for the sole benefit of the indemnity company. Likewise, in the instant case we hold that the contract here in question was one of ordinary reinsurance for the sole benefit of the said Texas Surety & Insurance Company; that it created no privity whatever between the appellant and appellee Stein Company, and hence neither that company nor the Mohawk Rubber Company has any right of action by reason thereof against the appellant.

The views expressed render it unnecessary to consider the assignments of error not mentioned. Some of them involve the same legal propositions already discussed, and the other questions raised become immaterial in view of the above holding.

The judgment of the court below against appellant is reversed, and judgment here rendered in its favor.

Reversed and rendered.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes