## MORROW v. BURLINGTON BASKET CO.
### et al.
### No. 1431.

Court of Civil Appeals of Texas. Waco.

Nov. 16, 1933.

Rehearing Denied Jan. 4, 1934.

King; Wood & Morrow and H. E. Cox, all of Houston, for appellant.

John T. Garrison, C. E. Coolidge, and Earle M. Manint, all of Houston, for appellees.

GALLAGHER, Chief Justice.

A short statement of the facts out of which this suit arose will aid in a ready understanding of the issues presented in this appeal. The Security Union Insurance Company, a Texas corporation, hereinafter called Security Union, issued its policy to the Burlington Basket Company, insuring it against loss by fire on certain property situated in the state of Iowa in the sum of $10,000. The Security Union had at that time a contract with the Inter-Ocean Reinsurance Company, an Iowa corporation, hereinafter called Inter-Ocean, for excess reinsurance on all such risks for all amounts over $2,500 and not exceeding $10,000. The Security Union reported the issuance of its policy to the Burlington Basket Company to the Inter-Ocean in the manner required in the contract between them, and the latter company then became an excess reinsurer of said risk to the amount of $7,500. The insured property was destroyed by fire. The Security Union failed or refused to pay the loss. The Burlington Basket Company thereupon instituted suit against it in the district court of Harris county, and on July 31, 1931, recovered a judgment against it in the sum of $10,366.48, which judgment at the time of trial remained unpaid. On the same date, appellant, Wright Morrow, was by order of the district court of Travis county appointed receiver of the Security Union, and such receivership was still pending at the time of trial. The Burlington Basket Company then filed its judgment with said receiver, and asserted in connection therewith a right to preference in payment out of any sum or sums paid by the reinsurer, Inter-Ocean, on its said contract. Such claim was allowed by the receiver, but preference in the payment thereof was denied. The Burlington Basket Company, hereinafter called appellee, then instituted this suit against the Inter-Ocean and Wright Morrow, hereinafter called appellant, as receiver, to recover judgment against the Inter-Ocean for the full amount of reinsurance carried by it in the sum of $7,500 as aforesaid, and against appellant as receiver denying him any interest therein. Appellant filed an answer denying the right of appellee to recover and a cross-action in which he sought as receiver to recover said sum of the Inter-Ocean. The Inter-Ocean filed an answer in which it on various grounds resisted a recovery against it by either appellant or appellee. Subsequently an agreement was reached between all parties to the suit that the Inter-Ocean should pay into court the sum of $5,500 in full of all claims against it by either appellant or appellee, and that an interlocutory judgment should be entered discharging it from further liability to either of them, and that such judgment of discharge should be incorporated in the final judgment entered in the cause. Such deposit having been made, the controversy between appellant and appellee as to which was entitled thereto was thereafter submitted to the court, and judgment rendered in favor of appellee therefor, denying appellant any right to or interest therein. Said judgment further provided that the amount so recovered should be applied as a credit on the judgment theretofore recovered by appellee against the Security Union.

### Opinion.

Appellant presents two assignments of error, in the first of which he assails the action of the court in awarding appellee judgment for the $5,500.00 deposited by the Inter-Ocean in the registry of the court in agreed satisfaction of all claims against it by either party arising out of its contract of reinsurance with the Security Union on the property of appellee which was destroyed by fire, and in the

second of which he assails the action of the court in refusing to award to him as receiver judgment therefor. Appellant contends thereunder that the contract between the Security Union and the Inter-Ocean was for ordinary reinsurance, and created no privity between the Inter-Ocean and the owner of the property insured nor a cause of action against it in favor of such owner for the loss thereof by fire. The contract between said insurance companies was a general one and had been in effect between them for some time when the Security Union issued its policy to appellee. The principal provisions of said contract were as follows:

"This excess reinsurance agreement is made by and between the Inter-Ocean Reinsurance Company of Cedar Rapids, Iowa, hereinafter called the Inter-Ocean, and the Security Union Insurance Company of Houston, Texas, hereinafter called the Security, witnesseth:

"Whereas, the Security issues policies of insurance against fire, tornado and lightning loss * * * in the United States of America, principally in the state of Texas, and desires to cede the excess liability over its net retention on all risks (not to exceed the limit hereinafter provided) to the Inter-Ocean, and the Inter-Ocean desires to accept the excess liability on each risk as hereinafter provided, deducting from any loss the amounts recovered under special reinsurance, if any, and salvages and rebates, subject to the terms and conditions hereinafter contained, it is hereby agreed by and between the Security and the Inter-Ocean as follows:

"The Security shall retain as its own net retention $2,500.00 on each risk and shall cede the excess on each risk to the Inter-Ocean to the extent not to exceed $10,000.00. * * *

"The net premium due the Inter-Ocean shall be forty per cent of the Security's premium on that portion of each risk reinsured hereunder.

"Wherever the Security writs a line which exceeds its own net retention plus the reinsurance capacity allowed herein, it agrees to purchase elsewhere pro rata reinsurance to the extent that its gross lines exceed the amount of its net retention of the reinsurance allowed herein.

"The Inter-Ocean is not liable for any loss or damage unless the Security has paid or become liable for a net amount (less pro rata reinsurance liability) at a specific location, reported hereunder, in excess of the net retention herein provided, and in no event to exceed the excess loss as provided in the class to which the location or cession applies.

"This reinsurance is excess and not pro rata insurance. * * * The Inter-Ocean shall have the right to participate in the adjustment of losses hereunder if they so elect. The Inter-Ocean shall pay its proportionate share of the adjustment and/or legal expense in event of a claim arising hereunder."

Various other provisions collateral to those quoted were contained in said contract, including an express provision for arbitration of all disputes between the parties thereto. The cession of liability by the Security and the acceptance thereof by the Inter-Ocean was consummated by the act of the former in filling out an instrument called an "excess reinsurance report" and forwarding it to the latter, and it was expressly provided that the Inter-Ocean should be liable for any reinsurance so reported notwithstanding delay or loss of such instrument in transmission.

■■ Appellant contends and appellee concedes that an ordinary reinsurance contract operates only between the original insurer and the reinsurer, and that the original insured who owned the property cannot maintain an action thereon for the loss of such property. See Southwestern Surety Ins. Co. v. Stein Double Cushion Tire Co. (Tex. Civ. App.) 180 S. W. 1165, 1167, par. 2 et seq. Appellant also concedes that a contract of reinsurance can be so drawn as to constitute an assumption by the reinsurer of the liability of the reinsured company to the original insured who owned the property, so as to entitle him to maintain an action thereon for the loss of such property. These different kinds of reinsurance are defined and distinguished by the Supreme Court of Michigan in the case of People v. American Central Ins. Co., 179 Mich. 371, 146 N. W. 235, 237, from which we quote as follows: "The term 'reinsurance' has two meanings. When a fire insurance company, with the consent of the insured, is substituted for another fire insurance company, so that the insured releases the original insurer and looks to the substituted company alone, reinsurance has been effected. A company desiring to cease doing business entirely, or in a particular state, may thus reinsure its risks. Usually the term is used with another meaning, which is that one fire insurance company indemnifies another on account of risks which the indemnified company is carrying and continues to carry. In such a case, the insured looks only to the company which issues its policy to him. A company may thus reinsure its risks, in whole or in part, by contract with the reinsuring company, and, with respect to the indemnity so secured, no new policies be written or issued. The company issuing the policy collects the premium from the insured. It pays the reinsuring company for its promise of indemnity."

We have examined all the cases cited by the respective parties hereto in which the terms of a reinsurance contract were held to constitute such an assumption of the obligation of the reinsured to the original insured or policyholder as to authorize an action by him thereon. In Southwestern Surety Insurance

Company v. Anderson, 106 Tex. 46, 155 S. W. 1176, an insurance company, in order to obtain a license to do business in Texas, had filed the bond required by law in such cases with a surety company as surety, to which was attached an obligation of the Southwestern reciting that it had reinsured the surety on the bond against all liability as such, and containing an agreement that such obligation should inure not only to the benefit of the commissioner of insurance, but to any and every party who might be a beneficiary under such bond, and authorizing an original action against it as if it had signed the same. In Employers' Indemnity Corporation v. Southwest National Bank (Tex. Civ. App.) 299 S. W. 676, the contract construed was between the Western Indemnity Company and the Employers' Indemnity Corporation, and recited, in substance, that the Western desired the Employers' to assume and discharge all its liabilities, except to its stockholders, and to liquidate its business, and that the Employers' was willing to assume such liabilities and pay the same and did thereby reinsure and assume all the outstanding policies of the Western covering all lines of insurance issued by it and did agree to pay all losses accrued and unpaid and all losses thereafter arising under each and every such policy. In Ruohs v. Traders' Fire Insurance Co., 111 Tenn. 405, 78 S. W. 85 et seq., 102 Am. St. Rep. 790, the contractual language employed was: "The North British & Mercantile Insurance Company of Edinburg and London, hereby agrees through its United States Manager, to assume the fire risks of the Traders' Fire Insurance Company, of New York, from six o'clock P. M. April 27th, 1900, not otherwise reinsured." The trial court found in that connection that the Traders' Fire Insurance Company had become insolvent, had retired from business and transferred all its assets to the North British Company, and that thereafter it dealt with the Traders' outstanding policies the same as its own. In Johannes v. Phenix Insurance Co., 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249, the contractual language construed was, in substance, that the Phenix reinsured all of the risks of the Standard Company and agreed that all losses thereafter arising under the policies of the latter should be borne by said Phenix Insurance Company and should be paid, satisfied, and discharged by it. It was shown in that connection that the Standard Company sold and turned over to the Phenix its entire business, together with a large amount of bonds and other property, in consideration of such engagement. In Shoaf v. Palatine Insurance Co., 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 204, the Palatine Insurance Company agreed, in substance, to reinsure all the outstanding fire risks of the Merchants' & Manufacturers' Fire Insurance Company and to assume all liability under any outstanding policies or risks theretofore written by the latter compa-

ny or that might be written thereafter prior to a named date. It was shown in that connection that such assumption was for a valuable consideration and that the latter company was to retire from business on such date. In Barnes v. Hekla Fire Insurance Company, 56 Minn. 38, 57 N. W. 314, 45 Am. St. Rep. 438, the contractual language construed embraced an express agreement to assume and pay losses of the policyholders. Some similar language to that employed in the contracts construed in the above cases was used in all the other cases cited where the reinsurance contract was held to constitute an assumption of the obligation of the reinsured to the original policyholder and to authorize a suit by him thereon, except in the case of Hunt v. New Hampshire Fire Underwriters' Ass'n, 68 N. H. 305, 38 A. 145, 38 L. R. A. page 514, 73 Am. St. Rep. 602. That case is distinguishable from the others cited by the fact that the contract provided that the loss, if any, was to be settled and paid by the reinsurer pro rata with the reinsured, and at the same time and place and upon the same terms and conditions. A careful perusal of the reinsurance contract here under consideration discloses that it contains no equivalent of the language used to define the obligation assumed by the reinsurer in any of the cases cited in which a recovery by the original policyholder was sustained. We have therefore reached the conclusion that such reinsurance contract is an ordinary one and that appellee cannot maintain an action thereon.

█ Appellee contends that, as between it and appellant, it is entitled to the $5,500 reinsurance money in the registry of the court on equitable grounds. The general rule is that, even after a loss under the original policy, the person originally insured has no equitable lien or preferable claim upon the proceeds of the reinsurance. 33 C. J. p. 58; Bradley & Co. v. Brown, 78 Neb. 836, 112 N. W. 331, 13 L. R. A. (N. S.) 152, 126 Am. St. Rep. 647; Appeal of Goodrich, 109 Pa. 523, 2 A. 209; Insurance Co. v. Park & Pollard Co., 190 App. Div. 388, 180 N. Y. S. 143, 147, par. 2. See in this connection, Southwestern Surety Ins. Co. v. Stein Double Cushion Tire Co. (Tex. Civ. App.) 180 S. W. 1165, 1168, par. 3. Appellee cites, in support of its contention, Globe National Fire Ins. Co. v. American Bonding & Casualty Co., 198 Iowa, 1072, 195 N. W. 728, 730, par. 3, 200 N. W. 737, 35 A. L. R. 1341. The reinsurance in controversy in that case was obtained in pursuance of a mutual agreement between the original insurer and its insured that reinsurance would be procured for its security. No such situation was pleaded nor proved in this case, and such authority is therefore inapplicable. The only other case cited by appellee in this connection is Hunt v. New Hampshire Fire Underwriters' Ass'n, 68 N. H. 305, 38 A. 145, 38 L. R. A. page 514, 73

Am. St. Rep. 602, which has already been distinguished.

The trial court erred in awarding the reinsurance money in the registry of the court to appellee, for which error the judgment is reversed. The facts seem to have been fully developed at the trial. Judgment will therefore be here rendered awarding such reinsurance money to appellant as a general asset of the Security Union.