STATE ex rel. MENNING, Plaintiff
v.
SECURITY GENERAL INSURANCE COMPANY, Defendant

(140 N.W.2d 676)

(File No. 10214.  Opinion filed March 3, 1966)

**Dana, Golden, Moore & Rasmussen** and **Peder K. Ecker,** Sioux Falls, for claimants and appellants.

**Braithwaite, Cadwell & Braithwaite,** Sioux Falls, for J. R. Menning, Receiver of above named defendant and respondent.

**Stordahl, May, Boe & Johnson,** Sioux Falls, for reinsurer.

ROBERTS, Judge.

The Security General Insurance Company, a South Dakota corporation, issued a policy of public liability insurance to Henry Buus with limits of $25,000 for one person and $50,000 for all persons involved in an accident. During the term of the policy, a motor vehicle thus insured and operated by Buus was involved in a collision in which Maria Mianchini, driver of the other car, and her passengers Edgardo Chiarabba and Olga Brizzolara were injured. Actions to recover damages for personal injuries against the insured were commenced in the United States District Court for the District of South Dakota. The insurer made an investigation of the accident and following negotiations effected a settlement of the claims in the total amount of $30,000.

A contract of reinsurance was in effect at the time of the accident. By this instrument, Insurance Company of North America for valuable consideration agreed to accept reinsurance as set forth in Exhibits A, B and C attached to and made a part of the agreement. Section 1 of Exhibit A provided that "as respects bodily injury liability, property damage liability, medical payments * * *" Security General Insurance Company "will retain for its own account and will pay the first Ten Thousand Dollars ($10,000) of loss * * * arising out of each accident taking place * * * and the Reinsurers hereby agree to reimburse the Company for the amount by which such loss shall exceed Ten Thousand Dollars ($10,000)". Article III, entitled "Liability of Reinsurer", was as follows: "The Liability of the Reinsurer shall follow that of the Company in every case and shall

be subject in all respects to all the general and special stipulations, clauses, waivers and modifications of the Company's policy, binder or other undertaking, and any endorsements thereon; \* \* \* In the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under the contracts reinsured, without diminution because of the insolvency of the Company. It is agreed, however, that the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the contract or contracts reinsured within a reasonable time after such claim is filed in the insolvency proceeding and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which they may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of litigation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer."

Article IV required the insurer to "advise the Reinsurer promptly of all claims and any subsequent developments pertaining hereto, which may in its opinion develop into losses involving reinsurance hereunder". It was also provided that "All payments of claims \* \* \* in which this reinsurance is involved shall be binding upon the Reinsurer, which shall be bound to pay or allow, as the case may be, their proportion of such payments. \* \* \* It is understood that, when so requested, the Company will afford the Reinsurer an opportunity to be associated with the Company, at the expense of the Reinsurer, in the defense or control of any claim or suit or proceeding involving this reinsurance, and the Company and the Reinsurer shall cooperate in every respect in the defense or control of such claim or suit or proceeding."

SDC 1960 Supp. 31.4003 requires the appointment of the Commissioner of Insurance of this state whenever a receiver is to be

appointed for an insurer domiciled in this state. The receiver is vested with authority under this section upon taking possession of the assets of a delinquent insurer to "immediately proceed to conduct the business of the insurer or to take such steps as are authorized by the laws of this state for the purpose of liquidating, rehabilitating, reorganizing, or conserving the affairs of the insurer." Security General was placed in conservatorship in December, 1963. This proceeding and appointment of the Commissioner of Insurance as conservator contemplated not the liquidation of the company, but the conserving of assets and temporary management of the business of the company. The Commissioner thereafter having concluded that the best interest of the policyholders and creditors required liquidation caused proceedings to be brought against Security General alleging that it was insolvent and obtained a judgment against it vesting in him as receiver all of the assets of the company.

The receiver thereafter filed a verified petition setting out the facts as to the settlement agreement here in question and alleging that if the insurer had not become insolvent the amount of the settlement would have been paid and the insurer would have been reimbursed to the extent of $20,000 by North America. The receiver asked the court to construe the insurance contract and to determine whether the sum of $20,000 be paid to the three persons involved in the accident or retained as part of the funds of the receivership. An order to show cause was entered, returnable August 28, 1964, directing the reinsurer and the three claimants to show cause why the settlement referred to should not be approved and why the court should not enter its orders with reference to disposition of the proceeds payable under the reinsurance agreement. After hearing, the court entered an order determining insofar as material to the instant controversy: "That when the sum of $20,000.00 is thus received the said Receiver shall hold the same for distribution of the general creditors of the Security General Insurance Company according to the further orders of this Court and that no part thereof belongs to the said claimants, Edgardo Chiarabba, Olga Brizzolara and Maria Bianchini except such part as they may secure by reason of filing their claim for $30,000.00 herein." The claimants have appealed.

■ The ordinary contract of reinsurance may be defined as a contract whereby one party, the reinsurer, agrees to indemnify another, the reinsured, either in whole or in part, against loss or liability which the latter may sustain or incur under a separate contract of insurance with the original insured. In the language of the statute, it is "one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance." SDC 31.0801. "The original insured has no interest in a contract of reinsurance." SDC 31.0804. If the contract is one of indemnity, whether by its terms or by operation of statute, the liability of the reinsurer is solely to the reinsured or receiver in case of insolvency. Clark County v. Bergstresser, 57 S.D. 424, 233 N.W. 276; see also 46 C.J.S. Insurance § 1232 and Annotations in 35 A.L.R. 181 and 103 A.L.R. 1485.

Counsel for appellants recognize that there is in the ordinary contract of reinsurance no privity of contract between the reinsurer and the policyholder of the reinsured and that a policyholder sustaining a loss cannot bring an action against the reinsurer. Counsel, however, contend that the contract of reinsurance in the instant case is more than a contract of indemnity. It may be conceded that if such a contract is broader than an ordinary reinsurance agreement and assumes and undertakes to discharge the liability of the first insurer to its policyholders, the liability of the reinsurer may be directly enforced by the original insured or his privies. Whitney v. American Insurance Company, 127 Cal. 464, 59 P. 897; Travelers' Ins. Co. v. California Ins. Co., 1 N.D. 151, 45 N.W. 703, 8 L.R.A. 769; Johannes v. Phoenix Ins. Co., 66 Wis. 50, 27 N.W. 414; Vail v. Norwich Union Fire Ins. Society, 217 Ill. 355, 100 N.E. 929, 44 L.R.A., N.S. 317; Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 57 N.W. 314.

■■ Courts cannot by implication extend or restrict a contract as meaning something different than that intended by the parties. "Liability under any written contract must be determined upon consideration of the words employed, read in the light of attending circumstances." Fidelity & Deposit Company of Maryland v. Pink, 302 U.S. 224, 58 S.Ct. 162, 88 L.Ed. 213; Janssen v. Muller, 38 S.D. 611, 162 N.W. 393; Huffman v.

Shevlin, 76 S.D. 84, 72 N.W.2d 852. It was as we have indicated agreed between the insurance companies in an agreement denominated as a "Casualty Reinsurance Agreement" that Security General would retain for its own account liability for the first $10,000 under any policy covered by their contract and North America would reimburse Security General for any claim paid in excess of that amount. These provisions describe a contract of reinsurance as defined by SDC 31.0801, supra, and do not indicate an intent that reinsurer would become directly liable to third persons suffering loss. Melco Systems v. Receivers of Trans-American Insurance Co., 268 Ala. 152, 105 So.2d 43; Stickel v. Excess Ins. Co. of America, 136 Ohio St. 49, 23 N.E.2d 839; Greenman v. General Insurance Corporation, 237 App.Div. 648, 262 N.Y.S. 569, affirmed 262 N.Y. 701, 188 N.E. 128; Fischer v. Excess Insurance Company of America, 8 Cir., 115 F.2d 755.

■■ Counsel for appellants stress in support of their assumption theory the insolvency provisions of Art. III of the Reinsurance Agreement. Insolvency did not change the nature of the contractual obligation between the insuring companies. In other jurisdictions, similar language with respect to insolvency has been construed to vest no right of action against a reinsurer in favor of creditors of the reinsured. The interpretation in Stickel v. Excess Insurance Company of America, 136 Ohio St. 49, 23 N.E.2d 839, is applicable here: "The language, liability 'shall be subject in all respects to all the general and special stipulations, clauses, waivers and modifications of the original policy,' etc., as used in Section III, does not mean that the original policy is to be incorporated into and made a part of the reinsurance contract, but that the stipulations, etc., referred to shall be taken into account as they may affect the liability of the reinsurer to the reinsured." See also Greenman v. General Reinsurance Corp., 237 App.Div. 648, 262 N.Y.S. 569, Aff'd. 262 N.Y. 701, 188 N.E. 128; Gill v. Blackhawk Mutual Insurance Co., 18 Ill. App.2d 338, 152 N.E.2d 210.

It would be a strained construction of the language of the agreement to hold that the reinsurer was under contract obligation to a policyholder of reinsured and became directly liable to persons suffering loss. It was a contract of indemnity between

the insuring companies both by its terms and operation of statute. The legislature as we have indicated has made a determination (SDC 31.0804) that an insured has no interest therein.

Affirmed.

All the Judges concur.