Tom I. McFARLING, Statutory Liquidator for State Board of Insurance of the State of Texas and Receiver of Dealers National Insurance Company, Appellant,

v.

Johnny W. MAYFIELD et al., Appellees.

No. 7571.

Court of Civil Appeals of Texas, Beaumont.

May 9, 1974.

Rehearing Denied May 30, 1974.

Herbert Crook, Austin, for appellant.

Don L. Davis, Austin, for appellee.

Charles W. Havens III, Reinsurance Assn. of America, Washington, D. C., amicus curiae.

DIES, Chief Justice.

Appellees were injured in an automobile collision and subsequently recovered judgment against Spiller Butane Co. Spiller's truck was covered by a policy of liability insurance issued by Dealers National Insurance Company. At the time of the accident Dealers had an excess of loss reinsurance agreement with Transport Insurance Company wherein the latter agreed to indemnify Dealers for its net loss in excess of $50,000 on any one occurrence covered by its outstanding automobile bodily injury liability and automobile property damage liability insurance policies.

In October, 1970, Dealers, by court order, was placed in permanent receivership, and Tom I. McFarling, appellant, was named receiver. Appellees' judgment against Spiller Butane was filed with appellant and approved in the amount of $99,425 as a priority loss claim for pro rata participation in the assets of the trust. Thereafter, appellant filed his claim with Transport as provided in the Reinsurance Agreement (Art. XVII), and Transport paid $52,005 to appellant. Appellees filed the suit we review against appellant and Transport, contending they were entitled to the full amount of the claim approved by appellant without regard to any pro rata participation in any assets of the receivership trust.

This stipulation presents the only issue presented:

"'Are plaintiffs entitled to the direct payment of the proceeds of the reinsurance contract paid to the receiver as a result of plaintiffs' claim or should these proceeds be held by the receiver for distribution to all creditors as directed by this court?'"

██ The District Court awarded appellees (plaintiffs) the $52,005; Transport paid appellant and thus decided they (plaintiffs) were entitled to the direct payment of the proceeds of Transport's reinsurance agreement. We disagree with the trial court and reverse the judgment.

Although a reinsurance agreement could by its language assume direct liability to the original insured or "guarantee the integrity of the policies of the reinsured company" as argued by appellees, the ordinary agreement creates no privity between the original insured and the reinsurer, and the former has no cause of action against the latter. Morrow v. Burlington Basket Co., 66 S.W.2d 746 (Tex.Civ.App., Waco, 1933, error ref.). See Southwestern Surety Ins. Co. v. Stein Double Cushion T. Co., 180 S.W. 1165 (Tex.Civ.App., Dallas, 1915, error ref.).

We have carefully examined the contract of reinsurance here involved, and we find no language to take it out of this general rule.

Generally, all creditors of an insolvent insurance company are entitled to share equally. 44 C.J.S. 733, Insurance § 134 (1945); 75 C.J.S. 919, Receivers § 283 (1952).

Art. 21.28–B, V.A.T.S., the "Loss Claimant's Priorities Act" (60th Leg. 1967) gives appellees a preferred claim, but no statutory authority is given for the preference granted by the trial court's judgment.

Reversed and rendered.

KEITH, Justice (concurring).

I concur in the opinion of the Chief Justice and in the reversal of the judgment of the trial court and the rendition of judgment in favor of the Receiver. However, being of the opinion that some of the more recent authorities should be discussed, I add these remarks to what has been said.

Dealers National Insurance Company was a primary liability insurer dealing with the general public, including its insured, Spillar Butane Company. Its contractual obligation, as expressed in its policy, was to pay on behalf of its insured all sums (within the policy limits) which Spillar might be called upon to pay because of the happening of an occurrence within the terms of the policy. It was a policy of liability insurance.

Because of the more limited nature of the risk typically assumed by the reinsurer, reinsurance has traditionally been considered as an indemnity contract rather than a liability policy. This is true of the language used in Article IV of the agreement which we now construe. Transport's liability to Dealers was expressed in this clear language:

"The obligation of the Reinsurer shall be to indemnify the Company for the Reinsurer's portion of *paid* loss and expense, where such loss and expense is incurred under coverages insured under this Agreement." (emphasis added)

Thus, reinsurer's obligation was to indemnify the primary company alone; it had no direct liability to either Spillar or to anyone to whom Spillar might be adjudged liable for an occurrence within the terms of Spillar's policy with Dealers.

The two Texas cases cited by the Chief Justice are but the tip of the iceberg since the vast majority of courts considering the question have held that the indemnity contract of the reinsurer does not create a policy of liability insurance nor the right of a direct action by either the original insured or the injured party against the reinsurer. It is necessary to cite only a few of the leading authoritative cases from other jurisdictions so holding. See, e. g., Melco System v. Receivers of Trans-America Ins. Co., 268 Ala. 152, 105 So.2d 43 (1958); Crozier v. Lenox Mutual Insurance Association, 252 Iowa 1176, 110 N.W.2d 403 (1961); Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572 (1971); American Cast Iron Pipe Co. v. Statesman Insurance Co., 343 F.Supp. 860 (D.Minn. 1972); Appeal of Schunk, 231 Minn. 219, 43 N.W.2d 104 (1950); and State ex rel. Menning v. Security General Ins. Co. (In re Security General Ins. Co.), 82 S.D. 47, 140 N.W.2d 676 (1966).

Plaintiffs, relying upon several cases from the State of Missouri,[1] overlook the fact that the Missouri Court in Homan v. Employers Reinsurance Corp. (136 S.W.2d at 296), quotes from the Texas case of Morrow v. Burlington Basket Co., cited by the Chief Justice, as follows:

" 'The general rule is that, even after a loss under the original policy, the person originally insured has no equitable lien or preferable claim upon the proceeds of the reinsurance.' Morrow v. Burlington Basket Co., Tex.Civ.App., 66 S.W.2d 746, 749, citing authorities.

"The Missouri courts recognize the above rule."

Plaintiffs argue: ". . . being third-party beneficiaries under the terms and provisions of this policy [of reinsurance], clearly had the right to pursue this direct action." Plaintiffs refer us to "an extended list of authorities" authorizing their direct action on the contract of reinsurance.

1. Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163 (1939); O'Hare v. Pursell, 329 S.W.2d 614 (Mo.Sup.1959); and First National Bank v. Higgins, 357 S.W.2d 139 (Mo.Sup.1962).

We have examined these authorities [all of which are cited in O'Hare v. Pursell, one of the Missouri cases cited in footnote 1, supra (329 S.W.2d at 620)], and note that each antedates the decision in Fidelity & Deposit Co. v. Pink, 302 U.S. 224, 58 S.Ct. 162, 82 L.Ed. 213 (1937), which will be noted more in detail later in this concurring opinion.

Instead of following the Missouri cases, as suggested by the plaintiffs, we adopt this language from Fontenot v. Marquette Casualty Co., supra, wherein the Supreme Court of Louisiana disposed of a similar contention:

"In only one jurisdiction in the United States has it been held that provisions which are somewhat similar to those contained in the Peerless-Marquette agreement afford a direct action against the reinsurer upon the insolvency of the reinsured. This holding comes out of Missouri and is founded upon earlier decisions there and elsewhere sounding in equity and not founded on contract interpretation in a court of law. [here follow the citations to *Homan* and *Higgins* cases] It may be said that *only in Missouri* have general provisions in a reinsurance agreement tieing that agreement to policies of insurance been interpreted as an assumption of the liability of the reinsured." (247 So.2d at 578, emphasis supplied)

The Louisiana Court then cites an impressive list of authorities from other ju-

risdictions, some of which have been mentioned earlier herein, supporting a contrary rule. We follow the rationale of the Louisiana case and decline to follow the Missouri aberration.[2]

Plaintiffs correctly concede that the insolvency clause in the contract of reinsurance was drafted to meet the requirements of state statutes enacted after the decision of the United States Supreme Court in the *Pink Case*, supra (302 U.S. 224, 58 S.Ct. 162).[3] The Texas statute is to be found in Art. 6.16(5), Insurance Code, V.A.T.S.; and, from our review of both the statute and the insolvency clause in the contract of reinsurance, the clause satisfies the Texas statute.

The payment which Transport made to the liquidator in settlement of its liability under the insolvency clause of the contract of reinsurance became a part of the assets of the receivership. Plaintiffs were not entitled to any preference other than that set out in Art. 21.28–B, § 5, Insurance Code, V.A.T.S. Our record affirmatively discloses that the receiver recognized all of plaintiffs' rights under this Loss Claimant's Priorities Act; they were not entitled to the additional preference which was given to them in the judgment of the trial court.

I join in the reversal of the judgment of the trial court and in rendering judgment for the defendant liquidator.

2. J. Olson, 'Reinsurers' Liability to the Insolvent Reinsured," 41 Notre Dame Lawyer 13, 26 (1965), also criticizes *Homan* because "the court apparently ignored or misinterpreted certain policy provisions." Other courts have likewise refused to follow the Missouri rule. See, e. g., Melco System v. Receivers of Trans-America Ins. Co., supra, and American Cast Iron Pipe Co. v. Statesman Ins. Co., supra, applying Minnesota law.

3. For a more detailed discussion of the *Pink Case*, see *Olson*, supra (41 Notre Dame Lawyer at 20). *Olson* states, as of December 1964, twenty-seven states had adopted statutes similar to that adopted in New York in 1940, with the Texas statute having been adopted in 1949. Id. at 23, fn. 66.